**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| INFRARED ENVIRONMENTAL INFRASTRUCTURE GP LIMITED, EUROPEAN INVESTMENTS (MORÓN) 1 LIMITED, EUROPEAN INVESTMENTS (MORÓN) 2 LIMITED, EUROPEAN INVESTMENTS (OLIVENZA) 1 LIMITED, and EUROPEAN INVESTMENTS (OLIVENZA) 2 LIMITED, | |
| *Plaintiffs*, | Civil Action No: 1:20-cv-00817-JDB |
| *v.* | |
| KINGDOM OF SPAIN, | |
| *Defendant*. | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT KINGDOM OF
SPAIN'S MOTION TO DISMISS THE COMPLAINT OR STAY THE PROCEEDINGS
AND IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

BACKGROUND ................................................................................................... 3

    I.     Origins Of The Underlying Arbitration ................................................... 3

    II.    ICSID's Unique Framework For Investor-State Arbitration ................................. 5

    III.   The Tribunal's Jurisdictional Reasoning And Award ........................................ 8

    IV.   Spain Has Instituted Annulment Proceedings Under The ICSID Convention ................................................................................................... 11

ARGUMENT ..................................................................................................... 13

    I.     A Stay Is Not Warranted Where The ICSID Annulment Committee Has Ruled That No Stay Is Warranted. ........................................................ 14

    II.    The Court Has Subject Matter Jurisdiction Under The FSIA And Must Enforce The Award Pursuant To Section 1650a ........................................... 18

           A.    Section 1605(a)(6) Does Not Afford Sovereigns An Opportunity To Relitigate Jurisdictional Issues Raised In The Arbitration That They Lost. .......................................................................... 18

           B.    The Court Also Has Subject Matter Jurisdiction Under FSIA § 1605(a)(1)'s Waiver Exception And Must Enforce The Award. ............. 22

    III.   *Forum Non Conveniens* Does Not Apply To ICSID Award Enforcement ........... 24

    IV.   The Foreign Sovereign Compulsion Doctrine Does Not Apply Because Spain Is Already Obligated To Comply With The Award. ................................. 27

    V.    The Court Should Grant Summary Judgment In Favor Of Plaintiffs ................... 29

CONCLUSION ................................................................................................... 30

## **TABLE OF AUTHORITIES**

**Federal Cases**                                                                                   **Page(s)**

*9REN Holding S.A.R.L. v. Kingdom of Spain*,
    No. 19-CV-01871 (TSC), 2020 WL 5816012 (D.D.C. Sept. 30, 2020) .................................16

*\*BCB Holdings Ltd. v. Gov't of Belize*,
    650 F. App'x 17 (D.C. Cir. 2016) ............................................................................................26

*Belize Bank Ltd. v. Gov't of Belize*,
    191 F. Supp. 3d 26 (D.D.C. 2016) ......................................................................................25, 26

*Belize Soc. Dev., Ltd. v. Gov't of Belize*,
    794 F.3d 99 (D.C. Cir. 2015) ..................................................................................................26

*Blue Ridge Invs., L.L.C. v. Republic of Arg.*,
    735 F.3d 72 (2d Cir. 2013).......................................................................................................19

*Chevron Corp. v. Republic of Ecuador*,
    795 F.3d 200 (D.C. Cir. 2015) ................................................................................................20

*Eiser Infrastructure Limited et al. v. Spain*,
    Civ. No. 18-1686 (CKK), ECF No. 51 (Feb. 13, 2020)..........................................................16

*Enghenharia de Projeto Ltda. v. Republic of Peru*,
    665 F.3d 384 (2d Cir. 2011).....................................................................................................26

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995).................................................................................................................20

*FTC v. Compagnie de Saint-Gobain-Pont-a-Mousson*,
    636 F.2d 1300 (D.C. Cir. 1980) ..............................................................................................28

*In Re Monegasque de Réassurance S.A.M. (Monde Re) v. Nak Naftogaz of Ukraine*,
    311 F.3d 488 (2d Cir. 2002).....................................................................................................26

*In re Sealed Case*,
    825 F.2d 494 (D.C. Cir. 1987) ................................................................................................28

*Infrastructure Servs. Lux. S.A.R.L. and Energia Termosolar B.V. v. Kingdom of Spain*,
    No. 1:18-cv-01753 (D.D.C. Aug. 28, 2019) ...........................................................................16

*Masdar Solar & Wind Cooperatief U.A. v. Spain*,
    397 F. Supp. 3d 34 (D.D.C. 2019) ..........................................................................................16

*Micula v. Gov't of Rom.*,
    404 F. Supp. 3d 265 (D.D.C. 2019) .........................................................................................19

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venez.*,
  863 F.3d 96 (2d Cir. 2017)......................................................................... *passim*

*Novenergia II – Energy & Env't (SCA) v. Spain*,
  Civ. No. 18-1148 (TSC) (Jan. 27, 2020)................................................16

*OI European Grp. B.V. v. Bolivarian Republic of Venez.*,
  Civil Action No. 16-1533 (ABJ), 2019 U.S. Dist. LEXIS 85128 (D.D.C. May 21,
  2019) .....................................................................................................21, 24

*Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*,
  No. 18-cv-594 (CRC), 2020 U.S. Dist. LEXIS 229283 (D.D.C. Dec. 4, 2020)....................22

*Rusoro Mining Ltd. v. Bolivarian Republic of Venez.*,
  300 F. Supp. 3d 137 (D.D.C. 2018) ..........................................................20

*Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venez.*,
  Civil Action No. 20-129 (RC), 2021 U.S. Dist. LEXIS 18485 (D.D.C. Feb. 1, 2021) ..........21

*Tatneft v. Ukr.*,
  301 F. Supp. 3d 175 (D.D.C. 2018) .......................................................20, 22, 23

*TECO Guat. Holdings, LLC v. Republic of Guatemala*,
  No. CV 17-102 (RDM), 2018 U.S. Dist. LEXIS 168518 (D.D.C. Sept. 30, 2018).....21, 24, 25

*Termorio S.A. E.S.P. v. Electranta S.P.*,
  487 F.3d 928 (D.C. Cir. 2007) ..................................................................27

*Tidewater Inv. SRL v. Bolivarian Republic of Venez.*,
  No. 17-cv-1457 (TJK), 2018 U.S. Dist. LEXIS 211469 (D.D.C. Dec. 17, 2018) .................19

*TMR Energy Ltd. v. State Property Fund of Ukr.*,
  411 F.3d 296 (D.C. Cir. 2005) ..................................................................26

**RULES**

Fed. R. Civ. P. 62(b) ....................................................................................17

ICSID Convention and Arbitration Rules, Rule 54 ...........................................7

**STATUTES**

9 U.S.C. §§ 201 *et seq*.................................................................................17

9 U.S.C. §§ 301 *et seq*.............................................................................17, 27

22 U.S.C. § 1650a .................................................................................. *passim*

28 U.S.C. § 1605(a)(1)................................................................................22

28 U.S.C. § 1605(a)(6) ................................................................................................18

28 U.S.C. § 1605(a)(6)(B) .........................................................................................2, 19

Federal Arbitration Act (9 U.S.C. 1 et seq.) ................................................... *passim*

Foreign Sovereign Immunities Act, 28 U.S.C. § 1608(a) .............................. *passim*

TREATIES

The Convention on the Recognition and Enforcement of Arbitral Award, 330 U.N.T.S.
  38 (1958) ("New York Convention"). ............................................................ *passim*

*The Convention on the Settlement of Investment Disputes Between States and Nationals
  of Other States ("ICSID Convention"), Mar. 18, 1965, 17 U.S.T. 1270, T.I.A.S. No.
  6090 ................................................................................................................ *passim*

*The Energy Charter Treaty ("ECT"), 2080 U.N.T.S. 100 (1994). ..................... *passim*

The Inter-American Convention on International Commercial Arbitration, 1438 U.N.T.S.
  245 (1975) ("Panama Convention"). ...................................................17, 19, 26, 27

INTERNATIONAL CASES

*Achmea B.V. v. Slovak Republic*,
  CJEU Case No. C-284/16 (Mar. 6, 2018) ...................................................... *passim*

*AES Summit Generation Limited and AES-Tisza Erömü Kft v. Hungary*,
  ICSID Case No. ARB/07/22, Award, (Sept. 23, 2010) ...........................................8

*Charanne B.V. and Construction Investments S.A.R.L. v. Kingdom of Spain*,
  SCC Arbitration No. 062/2012, Final Award, (Jan. 21, 2016) .................................8

*Electrabel S.A. v. Hungary*, ICSID Case No. ARB/07/19, Decision on Jurisdiction,
  Applicable Law and Liability, (Nov. 30 2012) .......................................................8

*Eiser Infrastructure Limited and Energía Solar Luxembourg S.à.r.l. v. Kingdom of Spain*,
  ICSID Case No. ARB/13/36, Award, (May 4, 2017) .............................................8

*InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*,
  ICSID Case No. ARB/14/12 ......................................................................... *passim*

    *Award, *InfraRed Environmental Infrastructure GP Limited and others v.
      Kingdom of Spain*, ICSID Case No. ARB/14/12 (Aug. 2, 2019) ........................ *passim*

    Decision on Continuation of Stay of Enforcement of the Award, *InfraRed
      Environmental Infrastructure GP Limited and others v. Kingdom of Spain*,
      ICSID Case No. ARB/14/12 (Oct. 27, 2020) ...................................11, 12, 15

Decision on Claimants' Objection Under ICSID Rule 41(5) To Respondent's
    Application For Revision, *InfraRed Environmental Infrastructure GP Limited
    and others v. Kingdom of Spain*, ICSID Case No. ARB/14/12 – Revision
    Proceeding (Mar. 8, 2021) .................................................................................12, 14

Procedural Order No. 6 on Infrared's Draft Undertakings, *InfraRed
    Environmental Infrastructure GP Limited and others v. Kingdom of Spain*,
    ICSID Case No. ARB/14/12 – Annulment Proceeding (Dec. 31, 2020)....................11

*Procedural Order No. 7 on the Stay of Enforcement of the Award, *InfraRed
    Environmental Infrastructure GP Limited and others v. Kingdom of Spain*,
    ICSID Case No. ARB/14/12 – Annulment Proceeding (Feb. 12, 2021) ....................12

*Moldova v. Komstroy*, Opinion of Advocate General Maciej Szpunar, CJEU, Case C–
    741/19 (Mar. 3, 2021) ...............................................................................................10

*Mr. Jürgen Wirtgen, Mr. Stefan Wirtgen, Mrs. Gisela Wirtgen, JSW Solar (zwei) GmbH
    & Co. KG v. The Czech Republic*,
    PCA Case No. 2014-03, Award, (Oct. 11, 2017) .......................................................8

*NextEra Energy Global Holdings B.V. et al v. Kingdom of Spain*, ICSID Case No.
    ARB/14/11 (May 28, 2020) .......................................................................................16

*Novenergia II – Energy & Environment (SCA) (Grand Duchy of Luxembourg), SICAR* v.
    *Kingdom of Spain,* SCC Arbitration (2015/063), Final Award (Feb. 15, 2018)...................8–9

*PV Investors v. Kingdom of Spain*,
    PCA Case No. 2012-14, Preliminary Award on Jurisdiction, (Oct. 13, 2014).........................8

*Slowakische Republik v. Achmea BV*, Opinion of Advocate General Melchior Wathelet,
    CJEU, Case C 284/16 (Sept. 19, 2017).....................................................................10

*RREEF Infrastructure (G.P.) Limited and RREEF Pan-European Infrastructure Two Lux
    S.à.r.l. v. Kingdom of Spain,* ICSID Case No. ARB/13/30, Decision on Jurisdiction,
    (June 6, 2016).............................................................................................................8

## OTHER AUTHORITIES

*Brexit: What you need to know about the UK leaving the EU*, BBC NEWS (Dec. 30,
    2020), https://www.bbc.com/news/uk-politics-32810887 .....................................25

CHRISTOPH H. SCHREUER, THE ICSID CONVENTION: A COMMENTARY (2d ed. 2009). ....19, 21, 24

Restatement 4th, Foreign Relations Law of the U.S....................................................29

*Statement of Andreas F. Lowenfeld, Deputy Legal Adviser, Department of State on the
    US Act implementing the ICSID Convention, 5 ILM 820, 826 (1966) ....................20, 25, 27

Plaintiffs InfraRed Environmental Infrastructure GP Limited, European Investments (Morón) 1 Limited, European Investments (Morón) 2 Limited, European Investments (Olivenza) 1 Limited, and European Investments (Olivenza) 2 Limited (collectively, "Plaintiffs"), all entities organized under the law of the United Kingdom, by and through their undersigned counsel, respectfully submit this Memorandum in Opposition to the Motion to Dismiss the Complaint or Stay the Proceeding. ECF No. 16 ("Motion") submitted by the Kingdom of Spain ("Spain" or the "Defendant") and in Support of Plaintiffs' Motion for Summary Judgment. Plaintiffs ask this court to honor the obligation of the United States under the Convention on the Settlement of Investment Disputes Between States and Nationals Of Other States (the "ICSID Convention")[1] to enforce an arbitration award, ECF No. 3-1 ("Award"), rendered under the Energy Charter Treaty ("ECT").[2]

Pursuant to Article 54(1) of the ICSID Convention, the United States is obligated to enforce an award rendered by an arbitration tribunal constituted under the auspices of the ICSID Convention.[3] To ensure compliance with that treaty obligation, the United States adopted a federal statute codified at 22 U.S.C. § 1650a ("Section 1650a"), which unambiguously mandates that an ICSID award "***shall*** be enforced and ***shall*** be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." (emphasis added). Based on these simple words, this Court's obligation is straightforward—enforce the Plaintiffs' ICSID Award.

---

[1] The Convention on the Settlement of Investment Disputes Between States and Nationals of Other States, Mar. 18, 1965, 17 U.S.T. 1270, T.I.A.S. No. 6090.

[2] The Energy Charter Treaty, 2080 U.N.T.S. 100 (1994).

[3] *See* Second Yanos Decl. Ex. 1, Database of ICSID Member States, ICSID World Bank Group. References to "Second Yanos Decl. Ex. [_]" are to the exhibits attached to the supporting Declaration of Alexander A. Yanos, dated March 12, 2021, which Plaintiffs attach to this memorandum in opposition.

However, like many defendants seeking to avoid their pecuniary obligations, Spain's strategy is to delay and obfuscate.  First, Spain asks this court to stay enforcement of the Award pending the conclusion of an ICSID annulment proceeding, but ignores the fact that the annulment committee has already lifted a stay on enforcement based on the terms of an undertaking submitted by the Plaintiffs that Spain accepted.  In particular, Plaintiffs have promised that if they identify and attach Spanish assets before the conclusion of annulment proceedings, such assets will not be dissipated until the conclusion of those proceedings.  Thus, a stay is not appropriate.

Second, under the guise of a challenge to the Court's subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), Spain seeks to relitigate before this Court the merits of jurisdictional defenses originally raised in the arbitration, arguing that it did not actually agree to arbitrate with Plaintiffs.  This is despite Spain having been a party to the ECT, a 27-year-old multilateral treaty containing its advance consent to do exactly that, since 1997.  Spain now argues that, because of European Union law, "Member States cannot make offers to arbitrate claims against nationals of other Member States."  *See* Spain's Memorandum in Support of the Motion, ECF No. 16-1 ("Br.") at 16.  However, this argument ignores Spain's agreement as a party to the ICSID Convention: (*i*) that such a defense should be resolved by the arbitration tribunal and (*ii*) that the exclusive forum for the resolution of any challenges to an ICSID Award should be an ICSID annulment committee.

This Court has no role in the evaluation of Spain's jurisdictional defenses.  The FSIA's arbitration exception, 28 U.S.C. § 1605(a)(6)(B), giving courts subject matter jurisdiction over petitions to enforce arbitration awards against sovereigns, does not provide a back door for states to challenge jurisdictional decisions made by arbitrators.  To the contrary, Section 1605(a)(6)(B) of the FSIA expressly provides the Court with subject matter jurisdiction over any actions to

enforce an award that "is *or may be* governed by a treaty . . . for the recognition and enforcement of arbitral awards." (emphasis added).  Precisely such a Treaty, the ICSID Convention, further provides that an ICSID Tribunal "shall be the judge of its own competence."  There is thus no basis in the FSIA for this Court to derogate from its obligation under Section 1650a.  Once presented with a valid ICSID award and with undisputed personal jurisdiction over Spain, the Court must enforce the award pursuant to Section 1650a and extend it "full faith and credit" in accordance with Section 1650a.

Understood in this context, Spain's prudential arguments under the doctrine of *forum non conveniens* fall away.  Put simply, Plaintiffs are not asking this Court to **resolve** any issue that should be resolved elsewhere.

Finally, Spain's invocation of the "foreign sovereign compulsion" doctrine also fails, not only because Spain is already obliged under international law to comply with Plaintiffs' Award, but also because Spain is itself a sovereign and does not face the kind of risk of "severe sanction" with which that doctrine is concerned.

As a result, the Court should deny Spain's Motion and grant summary judgment on Plaintiffs' request for relief, including specifically enforcement of the underlying ICSID Award as a judgment of this Court.  *See* ECF No. 1 at 10.

## BACKGROUND

### I.    Origins Of The Underlying Arbitration

Between the late 1990s and the early 2000s, Spain implemented a special regulatory regime to attract foreign investment in the solar power sector.  ECF No. 1 ¶ 19.  In 2011, Plaintiffs—companies organized and existing under the laws of the United Kingdom—relied upon that regulatory framework when investing a total of US$ 31 million into two Spanish concentrated solar power ("CSP") plants.  *Id.* ¶ 20.  Spain subsequently changed its regulatory framework in a

manner that adversely affected Plaintiffs' CSP investments and contrary to the prior representations it had made to attract those investments.

Spain and the United Kingdom are both parties to the ECT, a 1994 multilateral treaty that aims to "promote long-term cooperation in the energy field." *See* ECT ¶ 10. The ECT has 53 contracting parties, including the European Union itself, 26 individual EU member states, and 26 non-EU countries.[4]

Article 26 of the ECT provides for investor-state arbitration of disputes arising under the ECT between contracting states and investors of other contracting states within the framework of the ICSID Convention. Article 26's key provisions are as follows:

> (1) Disputes between a Contracting Party and an Investor of another Contracting Party relating to an Investment of the latter in the Area of the former, which concern an alleged breach of an obligation of the former under Part III shall, if possible, be settled amicably.
>
> (2) If such disputes cannot be settled according to the provisions of paragraph (1) within a period of three months from the date on which either party to the dispute requested amicable settlement, the Investor party to the dispute may choose to submit it for resolution: . . . (c) in accordance with the following paragraphs of this Article. . . .
>
> (3)(a) [E]ach Contracting Party hereby gives its unconditional consent to the submission of a dispute to international arbitration or conciliation in accordance with the provisions of this Article . . .
>
> (4) In the event that an Investor chooses to submit the dispute for resolution under subparagraph (2)(c), the Investor shall further provide its consent in writing for the dispute to be submitted to: (a) (i) The International Centre for Settlement of Investment Disputes, established pursuant to the [ICSID Convention], if the Contracting Party of the Investor and the Contracting Party party to the dispute are both parties to the ICSID Convention . . .
>
> (6) A tribunal established under paragraph (4) shall decide the issues in dispute in accordance with this Treaty and applicable rules and principles of international law . . .

---

[4] *See* Second Yanos Decl. Ex. 2, Signatories / Contracting Parties, Energy Charter Treaty, International Energy Charter.

(8) The awards of arbitration, which may include an award of interest, shall be final and binding upon the parties to the dispute.

ECT, art. 26.  Spain and the United Kingdom were at all relevant times and remain parties to the

ICSID Convention.  *See supra* note 3.

Plaintiffs accordingly commenced arbitration under the ECT and the ICSID Convention in

2014, alleging that Spain had breached its obligation under Article 10 of the ECT to accord "fair

and equitable treatment" to protected investors.  ECF No. 1 ¶¶ 21–22.

## II.    ICSID's Unique Framework For Investor-State Arbitration

The ICSID Convention establishes a unique framework for the arbitration of investor-state

disputes arising between "Contracting States" and nationals of other Contracting States.  The

Convention also establishes the International Centre for Settlement of Investment Disputes

("ICSID") as a part of the World Bank to administer investor-state arbitrations.  While the ICSID

Convention does not in itself create an agreement to arbitrate, it establishes a binding framework

applicable to arbitrations committed to ICSID under other instruments.   Some of the ICSID

Convention's key provisions—to which Spain, the United Kingdom, and the United States are all

Contracting States—follow below.[5]

*First*, Article 25(1) of the ICSID Convention gives ICSID jurisdiction over "any legal

dispute arising directly out of an investment, between a Contracting State . . . and a national of

another Contracting State, which the parties to the dispute consent in writing to submit to the

Centre."  Article 25(1) further provides that "[w]hen the parties have given their consent, no party

may withdraw its consent unilaterally."  *Id.*

---

[5] The United States has been a Contracting State to the ICSID Convention since 1966.  Spain has been a Contracting State since 1994.  The United Kingdom has been a Contracting State since 1967.  *See* Second Yanos Decl. Ex. 1.

*Second*, Article 41 of the ICSID Convention explicitly provides that an ICSID Tribunal has the authority to determine its own jurisdiction:

(1)  The Tribunal shall be the judge of its own competence.

(2)  Any objection by a party to the dispute that that dispute is not within the jurisdiction of the Centre, or for other reasons is not within the competence of the Tribunal, shall be considered by the Tribunal which shall determine whether to deal with it as a preliminary question or to join it to the merits of the dispute.

*Third*, Article 53(1) of the ICSID Convention provides that awards are "final and binding" on Contracting States.

The award shall be binding on the parties and shall not be subject to any appeal or to any other remedy except those provided for in this Convention.  Each party shall abide by and comply with the terms of the award except to the extent that enforcement shall have been stayed pursuant to the relevant provisions of this Convention.

*Fourth*, the Convention obliges each of the ICSID Convention's 155 Contracting States to recognize and enforce ICSID awards.  In doing so, the ICSID Convention establishes a unique global enforcement regime for ICSID awards.  To that end, Article 54(1) of the Convention provides that:

Each Contracting State shall recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that state. A Contracting State with a federal constitution may enforce such an award in or through its federal courts and may provide that such courts shall treat the award as if it were a final judgment of the courts of a constituent state.

The United States' obligations under Article 54(1) of the Convention with respect to ICSID awards are, as noted, implemented at 22 U.S.C. § 1650a(a), which in relevant part provides:

An award of an arbitral tribunal rendered pursuant to chapter IV of the Convention shall create a right arising under a treaty of the United States. The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States. The Federal Arbitration Act (9 U.S.C. 1 et seq.) shall not apply to enforcement of awards rendered pursuant to the convention.

Under Section 1650a, enforcement of an ICSID award is mandatory ("shall") and not subject to the defenses to the enforcement of international arbitration awards otherwise enumerated under the Federal Arbitration Act ("FAA").  22 U.S.C. § 1650a(a).  This is made explicit by Section 1650a, which provides that the FAA "shall not apply to enforcement of awards rendered pursuant to the Convention."  *Id.*

Instead, review of ICSID awards occurs exclusively within the ICSID Convention framework itself.  Article 52 of the ICSID Convention provides that ICSID Awards may be annulled by specially constituted *ad hoc* annulment committees appointed by the Chairman of the Administrative Council of ICSID (*ex officio* the President of the World Bank) on specific grounds enumerated in the ICSID Convention.  *See* ICSID Convention, art. 52(3).  Critically, an ICSID annulment committee is the ***only*** available mechanism for review of an ICSID award.  Article 53 of the ICSID Convention makes clear that an ICSID award "shall not be subject to any appeal or to any other remedy except those provided for in this Convention."  ICSID Convention, art. 53(1).

Finally, under Article 52(5) of the ICSID Convention, a party seeking annulment of an award may request a provisional stay of enforcement with its annulment request.  *See* ICSID Convention, art. 52(5).  Once an *ad hoc* annulment committee is constituted to hear the annulment application pursuant to Article 52, however, the committee can decide whether to continue the stay or to allow the party successful in the arbitration to seek enforcement of its award.  *See also* Second Yanos Decl. Ex. 3, ICSID Convention and Arbitration Rules, Rule 54.

### III.    The Tribunal's Jurisdictional Reasoning And Award

The Arbitration was heard before a tribunal of three eminent international lawyers, one of each of which was appointed by Spain and one by the Plaintiffs.  Award ¶¶ 98, 99, 102.[6]

During the Arbitration, Spain raised the same "intra-EU jurisdictional objection" that it attempts to litigate here.  *See* Award ¶ 256.  The Tribunal rejected this objection and upheld its jurisdiction.  It did not do so casually, but only after two rounds of written submissions and 5 days of hearings, and in a carefully reasoned and detailed section of the Award.  *See* Award ¶¶ 159, 204–74.

In doing so, the Tribunal first confirmed that the ECT alone formed the basis of its jurisdiction.  *Id.* ¶ 257.[7]  It also noted and found persuasive "the long record of recent arbitral awards or partial awards which disposed of the intra-EU jurisdictional objections and maintained the jurisdiction of the respective ECT tribunals."  *See id.* ¶ 260.[8]

---

[6] The Tribunal was composed of three prominent international lawyers: Professor William W. Park of Boston University; Professor Pierre-Marie Dupuy of France, and Mr. Stephen L. Drymer of Canada, who served as President of the Tribunal.  All three are experienced ICSID arbitrators.  *See* Second Yanos. Decl. Exs. 4–6.

[7] The Tribunal did not deny or overlook that its jurisdiction was founded on the parties' consent. *See* Br. at 16.  The significance of the Tribunal's reasoning on this point, rather, was that Spain's offer of arbitration, and the Tribunal's powers, arose from the Energy Charter Treaty and not from the EU legal order.  Award ¶¶ 256–74.

[8] The Tribunal cited *Electrabel S.A. v. Hungary*, ICSID Case No. ARB/07/19, Decision on Jurisdiction, Applicable Law and Liability, (Nov. 30, 2012); *AES Summit Generation Limited and AES-Tisza Erömü Kft v. Hungary*, ICSID Case No. ARB/07/22, Award, (Sept. 23, 2010); *PV Investors v. Kingdom of Spain*, PCA Case No. 2012-14, Preliminary Award on Jurisdiction, (Oct. 13, 2014); *Charanne B.V. and Construction Investments S.A.R.L. v. Kingdom of Spain*, SCC Arbitration No. 062/2012, Final Award (Jan. 21, 2016); *RREEF Infrastructure (G.P.) Limited and RREEF Pan-European Infrastructure Two Lux S.à.r.l. v. Kingdom of Spain,* ICSID Case No. ARB/13/30, Decision on Jurisdiction, (June 6, 2016); *Eiser Infrastructure Limited and Energía Solar Luxembourg S.à.r.l. v. Kingdom of Spain,* ICSID Case No. ARB/13/36, Award, (May 4, 2017); *Mr. Jürgen Wirtgen, Mr. Stefan Wirtgen, Mrs. Gisela Wirtgen, JSW Solar (zwei) GmbH & Co. KG v. The Czech Republic*, PCA Case No. 2014-03, Award, (Oct. 11, 2017); *Novenergia II – Energy & Environment (SCA) (Grand Duchy of Luxembourg), SICAR* v. *Kingdom of Spain*, SCC

The Tribunal first found that the "ordinary meaning" of Article 26(1) of the ECT applied to "disputes between an EU member state and an investor from another member state."  Award ¶¶ 262–63.  It then then considered Spain's arguments one-by-one.  *Id.* ¶ 259.  In this regard, it noted that, when any other treaty conflicts with the ECT's dispute resolution provisions, Article 16 of the ECT clearly states that the provision "most favourable to the investor must prevail."  *Id.* ¶ 264.  Spain, the Tribunal found, had failed to show that the EU legal system provided a more favorable method for resolving Plaintiffs' dispute than arbitration under the ECT.  *Id.*  The Tribunal then reasoned that the object and purpose of the ECT supported applying Article 26 to intra-EU disputes.  *Id.* ¶ 262.

Spain's invocation of *Achmea B.V. v. Slovak Republic*, CJEU Case No. C-284/16 (Mar. 6, 2018), did not convince the Tribunal.  The Tribunal reasoned that it was not "bound" to consider authority that existed "solely within the legal sphere of the European Union and, as such, [had] not met with the agreement of all ECT Contracting Parties."  *Id.* ¶ 267.  The Tribunal took the same view of statements of the European Commission asserting its views as to the "intra-EU objection." *See id*.  It also noted that the ECJ had yet to apply the reasoning of *Achmea* to claims under the ECT.  *See id.* ¶ 269.

The Tribunal likewise did not consider itself bound by the declarations made by several EU member states in January of 2019 asserting that *Achmea* had nullified any existing intra-EU BITs.  These statements, the Tribunal found, "were ***not*** adopted within the EU legal order" and were "***not*** EU legal instruments." *Id.* ¶ 269. They were "at best, declarations by the governments of ***some*** EU member states."  *Id.* (noting that "the mere existence of three (3) distinct declarations

---

Arbitration (2015/063), Final Award (Feb. 15, 2018).  *See* Award ¶ 260 n. 331.  In all of these cases, investor-state tribunals have rejected the intra-EU objection to claims under the Energy Charter Treaty.

enouncing three (3) distinct legal positions on the same issues by three (3) distinct groups of EU member states confirms that neither of those declarations can be attributed to the COREPER or, for that matter, to any other organ of the EU.") (emphases in original).[9]

The Tribunal further reasoned that any effective amendment to the ECT to carve out intra-EU disputes such that the ECT's investor-state provisions would apply between some, but not all, signatory states, could "only be valid with the unanimous consent of all ECT contracting parties." *See id*. at ¶¶ 268–70.   In this regard, the Tribunal noted the absence of a "disconnection clause" privileging European Union treaties over the ECT, and that such a clause had been proposed during negotiations of the ECT but ultimately rejected.[10]

Finally, the Tribunal observed that Spain's argument had been "largely based upon the premise that – in the context of intra-EU investor-state disputes – international arbitral tribunals would be called upon to apply or interpret EU law to resolve the merits of the dispute," but that "[t]hat premise does not hold true in this case." *Id.* ¶ 272.  Rather, the Tribunal found that "the

---

[9] Spain in its Reply will likely note that the Advocate-General of the ECJ released an advisory opinion on March 3, 2021, arguing that *Achmea* bars intra-EU investor-state arbitration under the ECT, *see* Opinion of Advocate General Maciej Szpunar, *Moldova v. Komstroy*, CJEU, Case C–741/19 (Mar. 3, 2021), but that opinion has not been sanctioned by the ECJ itself.  Nor are opinions of the Advocate-General necessarily a reliable indication of the ECJ's views.  Prior to the ECJ's decision in *Achmea*, then-Advocate-General Wathelet had reached exactly the opposite conclusion, finding no conflict between the European Union's organizational treaties and arbitration of intra-EU investor-state disputes.  *See* Opinion of Advocate General Melchior Wathelet, Slowakische Republik v. Achmea BV, CJEU, Case C 284/16 (Sept. 19, 2017).  In any event, as the Tribunal recognized, EU member states disagree as to whether or not *Achmea* applies to the ECT.  *See* Award ¶¶ 215, 269 (noting the January 2019 declarations of Finland, Malta, Sweden, Luxembourg, Slovenia, and Hungary on this issue).

[10] *See* Award ¶ 271 ("[T]he *travaux préparatoires* of the ECT confirm that the Contracting Parties turned their minds to the possibility of a disconnection clause between the ECT and the EU treaties but ultimately stopped short of including such a clause in the final text of the ECT. This fact – in conjunction with the existence of a disconnection clause in favour of the Svalbard Treaty – confirms the Contracting Parties' intention to apply the dispute resolution method provided at Article 26 ECT to intra-EU disputes.").

provisions of EU law are not dispositive nor even relevant to resolve the issues raised by this dispute," and that Spain had not shown its decision of Plaintiffs' ECT claims would "jeopardize the autonomy of the EU." *Id.*

## IV.   Spain Has Instituted Annulment Proceedings Under The ICSID Convention

Having disposed of Spain's jurisdictional challenge, the Tribunal continued to the merits. It ruled in Plaintiffs' favor, rendering an award for the amount of € 28,200,000 plus interest and costs on August 2, 2019.  *Id.* ¶ 599.

Spain instituted annulment proceedings to challenge the Award pursuant to the special review process for awards available under Article 62 of the ICSID Convention on December 5, 2019.[11]  In doing so, Spain requested a provisional stay of enforcement of the Award which was notified to the parties by the Secretary-General of ICSID on December 5, 2019.  Second Yanos Decl. Ex. 11, Decision on Continuation of Stay of Enforcement of the Award, *InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*, ICSID Case No. ARB/14/12,  ¶ 2 (Oct. 27, 2020).  An *ad hoc* annulment committee ("the Annulment Committee") was constituted to consider Spain's annulment request on February 21, 2020.  *Id.* ¶ 4.  Over the following year, the parties exchanged two rounds of pleadings and participated in a two-day hearing before the committee, during the course of which Spain indicated that it could *accept the lifting of the stay if Plaintiffs were to provide specific* "*guarantee[s]*."  Second Yanos Decl. Ex. 12, Procedural Order No. 6 on Infrared's Draft Undertakings, ¶ 2 (Dec. 31, 2020) (emphasis added).

---

[11] Second Yanos Decl. Ex. 7, Case Details, *InfraRed Environmental Infrastructure GP Limited and others v. Kingdom of Spain*, ICSID Case No. ARB/14/12.  The annulment committee is composed of Karim Hafez, Yuejio Zhang, and José Miguel Judice serving as President of the Committee.  These individuals are prominent international lawyers from Egypt, China and Portugal, respectively.  *See* Second Yanos Decl. Exs. 8-10.

On October 27, 2020, the Annulment Committee issued a procedural order providing that the stay of enforcement of the Award "should be lifted provided" that the Plaintiffs: (*i*) formally undertook "not to use, and not to transfer or distribute . . . any amounts collected from the Kingdom of Spain under the Award"; and (*ii*) issued a guarantee of such amounts, in a form acceptable to the committee after Spain was given an opportunity to comment. *See* Second Yanos Dec. Ex. 11, ¶ 199. After Spain made no objection to Plaintiffs' undertaking and guarantee to this effect, the Annulment Committee issued a procedural order lifting the stay on enforcement of the Award on February 12, 2021. *See* Second Yanos Decl. Ex. 13, Procedural Order No. 7 on the Stay of Enforcement of the Award, ¶ 8 (Feb. 12, 2021).[12]

Meanwhile as of December 31, 2020, the United Kingdom exited the European Union, *see* Second Yanos Decl. Ex. 14, although, like Spain, it remains a party to the ECT and the ICSID Convention.

Plaintiffs instituted the current proceedings before the Court on March 25, 2020, seeking an order registering their ICSID Award as a judgment of this Court pursuant to 22 U.S.C. § 1650a. *See* ECF No. 1. Spain stipulated to proper service under the Foreign Sovereign Immunities Act ("FSIA") on January 8, 2021. *See* ECF No. 14 ("Petitioners . . . effected service of process on Spain in accordance with the Foreign Sovereign Immunities Act, 28 U.S.C. § 1608(a) and the

---

[12] Although never mentioned in Spain's Motion to Dismiss, the original Tribunal recently dismissed yet another provisional stay. On July 30, 2020, more than six months into proceedings before the Annulment Committee, Spain sought "revision" of the Award from the Tribunal under Article 51 of the ICSID Convention. *See* Second Yanos Decl. Ex. 7. Article 51(4) provides for a "provisional stay" of the Award pending the Tribunal's decision of a request for revision of the Award. On March 8, 2021, the Tribunal denied Spain's revision application "for being manifestly without legal merit." *See* Second Yanos Decl. Ex. 19. As a result, there are no stays in any proceeding related to the Award.

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the 'Hague Service Convention') on September 9, 2020.").

## **ARGUMENT**

Section 1650a's instructions to U.S. federal district courts presented with an ICSID award are explicit:

> The pecuniary obligations imposed by such an [ICSID] award *shall be enforced* and *shall be given the same full faith and credit as if the award were a final judgment* of a court of general jurisdiction of one of the several States. The Federal Arbitration Act (9 U. S. C. 1 et seq.) *shall not apply* to enforcement of awards rendered pursuant to the convention.

22 U.S.C. § 1650a(a) (emphasis added).   Plaintiffs seek no more than the enforcement as a judgment of an authentic ICSID award rendered pursuant to this clear statutory command.

Eager to avoid that result, Spain characterizes this case as one about whether Plaintiffs "can use the courts of the United States to avoid decisions of the European courts about European law as applied to European disputes," Br. at 1, and invoking the doctrines of *forum non conveniens* and foreign sovereign compulsion.

This Court should not stay enforcement of the Award where the Annulment Committee, operating under rules to which Spain has consented in the ICSID Convention, has decided that the Award may be enforced, subject to a formal undertaking and guarantee from Plaintiffs assuring Spain of recoupment of any amounts collected in the unlikely event that the Award is annulled. Those assurances have been approved by the Annulment Committee without objection from Spain.

Spain has already had the opportunity to raise its public international law arguments about the interplay of two bodies of international law to which the United States is not a party—the Energy Charter and the treaties constituting the European Union—in a public international law forum to which it agreed: an arbitral tribunal constituted under the ICSID Convention.  Indeed,

13

Spain continues to argue its case for annulment of the Award before the Annulment Committee and that, under the ICSID Convention, is where Spain's arguments about *Achmea* belong.

By contrast, this Court's role under Section 1650a is clear: presented with a legitimate ICSID award, the Court "shall" enforce it.  *See* 22 U.S.C. § 1650a(a) (an ICSID award "***shall be enforced*** and ***shall be given the same full faith and credit as if the award were a final judgment*** of a court of general jurisdiction of one of the several States") (emphasis added).  Section 1650a, moreover, gives effect to the United States' obligations under a treaty—the ICSID Convention—to which the United States ***is*** a party, along with Spain and the United Kingdom.  As noted, Article 54 of the ICSID Convention provides that every Contracting State "shall recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State."  That is what the Court should do here.

## I.    A Stay Is Not Warranted Where The ICSID Annulment Committee Has Ruled That No Stay Is Warranted.

Spain requests that the Court issue a stay on enforcement of the Award pending the resolution of its annulment proceedings.  Br. at 30–31.  But the Court should not impose a stay here where all other stays in Spain's annulment and revision proceedings have been lifted by the Tribunal and the Annulment Committee.  Most recently, the Tribunal dismissed Spain's application for revision of the Award on March 8, 2021, "for being manifestly without legal merit."  Second Yanos Decl. Ex. 19 ¶ 81(1).[13]   In doing so, the Tribunal terminated an automatic

---

[13]  That the underlying Award was unanimously decided by the Tribunal and featured no dissent also weighs against imposing a stay.  While the annulment proceedings remain pending,  Spain's chances of succeeding are slim and reaching—just as they were in the revision proceedings and just as they are in these confirmation proceedings.

provisional stay of the Award that followed from Spain's revision application pursuant to Article 51(4) of the ICSID Convention.

Moreover, while the Annulment Committee has yet to dismiss Spain's application, it has affirmatively ruled that Spain is *not* entitled to a stay and Spain itself subsequently *accepted* the terms for lifting of the stay. Second Yanos Decl. Ex. 13, ¶¶ 4–5, 8. As noted above, Spain's annulment request was registered on December 5, 2019. Second Yanos Decl. Ex. 11, ¶ 3. In its annulment application, Spain requested a continuation of the provisional stay of enforcement of the Award prior to the constitution of the committee pursuant to Article 52(5) of the Convention. *Id.* ¶ 2. Plaintiffs asked the Committee to lift the stay. *Id.* ¶ 26. Spain opposed but acknowledged that it could *accept the lifting of the stay* if Plaintiffs were to provide a "guarantee." *See Id.* ¶ 75.

On October 27, 2020 the Annulment Committee issued a procedural order providing that the stay of enforcement of the Award "should be lifted provided" that the Plaintiffs made formal undertakings "not to use, and not to transfer or distribute . . . any amounts collected from the Kingdom of Spain under the Award" and issued a guarantee as to Spain's ability to recoup such amounts in the event of annulment, in a form acceptable to the committee after Spain was given an opportunity to comment. *See Id.* ¶ 199. After the Plaintiffs complied with these requirements and Spain made no objections, the committee issued a procedural order lifting the stay on enforcement of the Award on February 12, 2021. Second Yanos Decl. Ex. 13.

Under these circumstances there is **no risk** of prejudice to Spain if this Court: (*i*) were to confirm and enforce the Award pursuant to Section 1650a; and (*ii*) Plaintiffs subsequently identified Spanish assets in the United States; (*iii*) attached those assets pursuant to another court order; and then, (*iv*) the annulment committee ruled that the Award should be overturned.

Thus, the guarantees that Plaintiffs provided as a condition for the Annulment Committee's lifting of the stay makes this case different from others cited by Spain.  In none of those cases has the court imposed a stay after an ICSID annulment committee had lifted one upon the provision of a formal guarantee that was invited by Spain.

For example, in *NextEra Energy Global Holdings B.V. et al. v. Kingdom of Spain*, the annulment committee in that case stated that it would continue the stay only ***if Spain***, among other things, would "in accordance with its obligations under the ICSID Convention recognize the Award rendered by the Tribunal as final and binding and will abide by and comply with the terms of the award." *See* Second Yanos Decl. Ex. 15, ¶ 1 (emphasis added).  Spain refused to do so, prompting the termination of the stay without any security or guarantee. *Id.* ¶¶ 14–15.  In *Masdar Solar & Wind Cooperatief U.A. v. Spain,* 397 F. Supp. 3d 34, 36 (D.D.C. 2019), and *9REN Holding S.A.R.L. v. Kingdom of Spain*, No. 19-CV-01871 (TSC), 2020 WL 5816012, at *3 (D.D.C. Sept. 30, 2020), the Court issued a stay while the ICSID stay was still in place.  In *Infrastructure Servs. Lux. S.A.R.L. and Energia Termosolar B.V. v. Kingdom of Spain*, No. 1:18-cv-01753, ECF No. 36 (D.D.C. Aug. 28, 2019), the court issued a stay after an annulment committee had lifted one without requiring comparable protections for Spain, let alone undertakings and a guarantee  which Spain invited.  In *Novenergia II – Energy & Env't (SCA) v. Spain,* Civ. No. 18-1148 (TSC), ECF No. 43 at 1 (Jan. 27, 2020), the investor-claimant was already prohibited by a foreign court from enforcing the award pending set aside proceedings in Sweden.  *Id.*  And, in *Eiser Infrastructure Limited et al. v. Spain,* Civ. No. 18-1686 (CKK), ECF No. 51 (Feb. 13, 2020), the Court's analysis hinged on the annulment committee's assurance that a decision was to be expected within the month of the Court's order.

As a result, none of the other cases dealt with the situation presently before the Court: where the party seeking execution presented a guarantee approved by the annulment committee to promptly make Spain whole in the off chance it succeeded in the annulment of the underlying award.  Under the circumstances, the Court should defer to the arbitral process and decline to substitute its judgment for that of the ICSID annulment committee.

Moreover, if notwithstanding the fact that: (*i*) the exclusive power to stay enforcement proceedings is vested with the ICSID annulment committee; and (ii) *quod non*, any conceivable basis for a stay in this case was vitiated by the undertaking solicited by Spain and provided by the Claimant in the annulment proceedings, the Court were nevertheless inclined to issue a stay in this proceeding, the Court should in its discretion condition any stay on Spain's provision of a bond. In all other circumstances, it is routine to condition a stay of proceedings on the provision of suitable security.  For example, a stay of enforcement pending an appeal would be conditioned on a supersedeas bond.  *See* Fed. R. Civ. P. 62(b).  Similarly, if this were a proceeding under the New York Convention[14] or Panama Convention[15] seeking the enforcement of a foreign arbitral award (a situation excluded under the specific terms of Section 1650a), this court would have the power to condition the issuance of a stay on the posting of suitable security.  *See, e.g.,* Article VI of the New York Convention & Article 6 of the Panama Convention.  For Spain to be able to obtain a stay without posting suitable security here, where any stay would have no statutory basis at all, would be illogical and unfair.[16]

---

[14] Convention on the Recognition and Enforcement of Arbitral Award, 330 U.N.T.S. 38 (1958) ("New York Convention"), codified at 9 U.S.C. §§ 201 *et seq.*

[15] Inter-American Convention on International Commercial Arbitration, 1438 U.N.T.S. 245 (1975) ("Panama Convention"), codified at 9 U.S.C. §§ 301 *et seq.*

[16] Spain may protest that an order that it post a bond would violate its sovereign immunity, analogizing a bond to a form of prejudgment attachment which would require an explicit waiver

II.     **The Court Has Subject Matter Jurisdiction Under The FSIA And Must Enforce The Award Pursuant To Section 1650a.**

        A.     **Section 1605(a)(6) Does Not Afford Sovereigns An Opportunity To Relitigate Jurisdictional Issues Raised In The Arbitration That They Lost.**

Spain is correct that, as a foreign state, it enjoys presumptive immunity from the jurisdiction of United State courts under the FSIA.  However, the applicability of 28 U.S.C. § 1605(a)(6)—the FSIA's "arbitration exception"—could not be clearer.  In particular, Section 1605(a)(6) provides in relevant part that:

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case— … (6) in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitrate, if … (B) the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards….

28 U.S.C. § 1605(a)(6).

Thus, federal courts have subject matter jurisdiction over a sovereign state where, as here, a party seeks to confirm an arbitration award rendered against that state pursuant to an agreement to arbitrate.  *See* 28 U.S.C. § 1605(a)(6).  As this Court noted in a case resulting in the enforcement of an ICSID award rendered against an EU member state in favor of investors from another EU member state, "[c]ourts consistently have held that the FSIA's arbitration exception confers subject

---

under Section 1609 of the FSIA.  However, that analysis would be flawed for two reasons: (*i*) pursuant to Section 1650a, Plaintiffs' ICSID Award already has the status of a "final judgment of a court of general jurisdiction of one of the several States"—thus, any bond required could not be deemed a pre-judgment attachment; and (*ii*) Spain has no "right" to a stay—thus, nothing in the FSIA prevents the Court from conditioning its discretionary grant of stay on Spain's voluntary agreement to post a bond and waiver of any defenses it might have to the posting of such a bond under Section 1609 of the FSIA.

matter jurisdiction over petitions to enforce ICSID awards." *See Micula v. Gov't of Rom.*, 404 F. Supp. 3d 265, 277 (D.D.C. 2019) (citing *Blue Ridge Invs., L.L.C. v. Republic of Arg.*, 735 F.3d 72, 85 (2d Cir. 2013) ("[E]very court to consider whether awards issued pursuant to the ICSID Convention fall within the arbitral award exception to the FSIA has concluded that they do.")); *Tidewater Inv. SRL v. Bolivarian Republic of Venez.*, No. 17-cv-1457 (TJK), 2018 U.S. Dist. LEXIS 211469, * 10 (D.D.C. Dec. 17, 2018) (same).

The notion that this provision in the FSIA allows sovereigns the opportunity to relitigate the question of whether they actually agreed to arbitrate in the first place, even though the issue was decided by the arbitration tribunal is belied by the expansive language of Section 1605(a)(6)(B) which requires the court to exercise subject matter jurisdiction over an application to enforce an award irrespective whether that application is governed by a treaty or could be governed by that treaty. As Congress knew at the time it adopted Section 1605(a)(6)(B), some of the treaties to which the United States is a party in relation to the enforcement of arbitration awards allow the award debtor to raise defenses based on the fact that there was no valid agreement to arbitrate. *See*, *e.g.*, New York Convention at art. V(a) and Panama Convention at art. 5(1)(a)). However, the ICSID Convention, with its self-contained framework for the review of arbitration awards is different. *See* ICSID Convention, Arts. 52–53. Because Spain and the United States both agreed that such matters would be delegated exclusively to an *ad hoc* annulment committee, there is no opportunity for Spain to raise its jurisdictional defenses in a U.S. court.[17]

---

[17] *See* Second Yanos Decl. Ex. 16, CHRISTOPH H. SCHREUER, THE ICSID CONVENTION: A COMMENTARY, 1139 (2d ed. 2009) ("The Convention provides for a number of remedies and review procedures . . . the System of review under the Convention is self-contained and does not permit any external review. This principle also extends to the stage of recognition and enforcement of ICSID awards. A domestic court or authority before which recognition and enforcement is sought is restricted to ascertaining the award's authenticity. It may not re-examine the ICSID

As a result, Spain's argument that EU law or *Achmea* somehow vitiated its consent to arbitrate investor-state disputes under the ECT does not change the analysis. Section 1650a's command is that ICSID Awards "shall" be enforced. That statute must be applied on the basis that Congress understood how the ICSID Convention worked. Crucially, Article 41(1) of the ICSID Convention provides that an ICSID tribunal "shall be the judge of its own competence," while Article 53(1) of the ICSID Convention limits review of an ICSID tribunal's jurisdictional determination to the Article 52 annulment process (of which Spain is currently availing itself). ICSID Convention, arts. 53(1), 52. It follows that the Tribunal's determination that it had jurisdiction under the ECT must control this Court's application of the FSIA's "arbitration exception" and is not subject to review.[18]  *See Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venez.*, 863 F.3d 96, 102 (2d Cir. 2017) (Under Section 1650a, a court is "not permitted to examine

---

tribunal's jurisdiction. It may not re-examine the award on the merits. Nor may it examine the fairness and propriety of the proceedings before the ICSID tribunal."). *See also id.* at 1140-41 ("The Convention's drafting history shows that domestic authorities charged with recognition and enforcement have no discretion to review the award once its authenticity has been established.") (citing Second Yanos Decl. Ex. 17, Statement of Andreas F. Lowenfeld, Deputy Legal Adviser, Department of State on the US Act implementing the ICSID Convention, 5 ILM 820, 826 (1966)).

[18] If the Tribunal's jurisdictional decision were reviewable, it would be upheld. The "presumption" under the FAA "that courts review arbitral tribunals' jurisdictional determinations *de novo*," gives way where the "parties have clearly and unmistakably delegated the question of 'arbitrability.'" *See Rusoro Mining Ltd. v. Bolivarian Republic of Venez.*, 300 F. Supp. 3d 137, 146 (D.D.C. 2018) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995)). Here, arbitrability was unmistakably assigned to the Tribunal because Article 41(1) of the ICSID Convention makes the Tribunal "the judge of its own competence." While Spain argues that the offer of arbitration Plaintiffs accepted was void under *Achmea*, it does not dispute that it is a party to Article 41(1) of the ICSID Convention. Spain thus at a minimum *agreed to arbitrate the arbitrability* of claims under the Energy Charter Treaty within the ICSID framework, and the Tribunal's decision of that question must be upheld. *See Chevron Corp. v. Republic of Ecuador*, 795 F.3d 200, 207 (D.C. Cir. 2015) (finding no need for a District Court to wade into jurisdictional concerns where the parties had already delegated the issue to the tribunal); *Tatneft v. Ukr.*, 301 F. Supp. 3d 175, 190 (D.D.C. 2018) (finding subject matter jurisdiction through the arbitration exception after noting that the parties committed the issue of arbitrability to the tribunal).

an ICSID award's merits, its compliance with international law, **_or the ICSID tribunal's jurisdiction to render the award_**" but may only "examine the judgment's authenticity and enforce the obligations imposed by the award.") (emphasis added).   *See also OI European Grp. B.V. v. Bolivarian Republic of Venez.*, Civil Action No. 16-1533 (ABJ), 2019 U.S. Dist. LEXIS 85128, at *11 (D.D.C. May 21, 2019) ("ICSID's enabling statute makes clear that the Court may not re-examine the propriety of the award."); *TECO Guat. Holdings, LLC v. Republic of Guatemala*, No. CV 17-102 (RDM), 2018 U.S. Dist. LEXIS 168518 at *2 (D.D.C. Sept. 30, 2018) (a court "is 'not permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award;' all it may do is 'examine the judgment's authenticity and enforce the obligations imposed by the award.'") (quoting *Mobil*, 863 F.3d at 102).[19]

Here, Plaintiffs have presented the Court with an authentic ICSID Award.  *See* Award.  The Tribunal's jurisdictional determination, embodied in that Award, is not reviewable under Section 1650a.[20]  The Court has subject matter jurisdiction under the FSIA and should enforce the Award pursuant to Section 1650a, extending it full faith and credit.

---

[19] This is not to say that a State can never raise a defense in an ICSID award enforcement proceeding.  Outside of the defenses in the FAA, respondent States might challenge the authenticity of an award or the sufficiency of service under the FSIA.  *See*, *e.g.*, *Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venez.*, Civil Action No. 20-129 (RC), 2021 U.S. Dist. LEXIS 18485, at *20 (D.D.C. Feb. 1, 2021) (assessing and dismissing Venezuela's defense challenging service under the FSIA for ICSID confirmation and enforcement proceedings).

[20] *See* Second Yanos Decl. Ex. 16, Schreuer at 1153 ("The question of immunity from jurisdiction does not arise in the context of the [ICSID] Convention.  Jurisdiction is governed by Article 25 of the Convention and is determined by the Tribunal under Article 41.  Domestic courts have no role to play in the determination of jurisdiction.").

**B. The Court Also Has Subject Matter Jurisdiction Under FSIA § 1605(a)(1)'s Waiver Exception And Must Enforce The Award.**

In addition, the Court has subject matter jurisdiction under the FSIA's "waiver exception" to sovereign immunity.

Section 1605(a)(1) of the FSIA provides that a foreign state may waive its sovereign immunity "either explicitly or by implication."  28 U.S.C. § 1605(a)(1).  By signing both the ECT and the ICSID Convention, Spain impliedly waived its immunity with respect to the proceedings involving the *enforcement* (as opposed to execution) of arbitration awards governed by those agreements.  Simply put, Spain was on notice of both treaties' provisions.  Spain knew that in agreeing to the ECT it was opening the door to ICSID arbitration of disputes arising under its terms.  Spain was likewise on notice of the ICSID Convention's provisions on: (*i*) a tribunal's determination of its own jurisdiction; (*ii*) the self-contained review of awards within the ICSID Convention's annulment framework; and (*iii*) Article 54's obligations on all Contracting States, including the United States, with respect to the enforcement of awards.  It follows that Spain should be deemed to have waived any objection to jurisdiction in proceedings under Section 1650a.

This follows from the logic of this court's prior decisions in award enforcement cases arising under a different treaty, the New York Convention.  *See*, *e.g.*, *Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, No. 18-cv-594 (CRC), 2020 U.S. Dist. LEXIS 229283, at *22 (D.D.C. Dec. 4, 2020) (finding an implied waiver when Nigeria agreed to be bound by the New York Convention); *Tatneft v. Ukraine*, 301 F. Supp.3d 175 (D.D.C. 2018), *aff'd* 2019 U.S. App. LEXIS 15787 (D.C. Cir. May 28, 2019), *cert. denied* 2020 U.S. LEXIS 392 (U.S. Jan. 13, 2020) (holding that Ukraine waived its sovereign immunity pursuant to 28 U.S.C. § 1605(a)(1) by ratifying the New York Convention.—a conclusion directly applicable under the ICSID Convention).  *See also Mobil*, 863 F.3d at 104 ("FSIA's immunity provisions do not shield a foreign sovereign from

federal courts' exercise of jurisdiction over a civil action to enforce an ICSID award: the waiver and arbitration exceptions to immunity . . . apply.").

Spain's arguments to the contrary are unpersuasive. Spain does not dispute that Article 54 of the ICSID Convention requires each Contracting State "to recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State," *see* Br. at 21, and has obviously availed itself of the Convention's self-contained annulment process.

In particular, Spain's efforts to distinguish *Tatneft* v. *Ukraine*, 301 F. Supp.3d 175 (D.D.C. 2018), are unavailing. *See* Br. at 22–23. Although *Tatneft* was a New York Convention rather than an ICSID Convention case, *Tatneft* clearly stands for the proposition that signatories to an international convention providing for the enforcement of arbitration awards should expect awards governed by that convention to be enforced in the courts of other signatory states according to its terms. *See Tatneft*, 301 F. Supp.3d at 192. *Both* conventions are applied against a background presumption of sovereign immunity. The fundamental insight—that a signatory to a convention governing enforcement of international arbitration awards cannot object to being held to that convention's terms in court—applies regardless.[21] The only difference is that the scope of a Court's review of an ICSID Award is even narrower, such that the Tribunal's jurisdictional finding

---

[21] That Ukraine in *Tatneft* "never argued that the bilateral investment treaty at issue was invalid or that its offer to arbitrate could not be accepted (as Spain does here)" makes no difference to a waiver analysis. Br. at 22. In both cases, the respondent State challenged the tribunal's power to make its award and in both cases the tribunals rejected those challenges. *Compare Tatneft*, 301 F. Supp. 3d at 188 ("The arbitral tribunal's Jurisdiction Decision addressed and rebutted a variety of jurisdictional objections raised by Ukraine.") *with* Award ¶ 274 (dismissing intra-EU jurisdictional objections). Waiver was not found in the position that the State took in the arbitration, but rather in the State's status as a party to the convention pursuant to which an arbitration award against it would be enforced. *Tatneft*, 301 F. Supp. 3d at 192 (finding implied waiver where "Ukraine agreed to arbitrate in the territory of a state [France] that has signed the New York Convention.").

is not subject to review.[22] *See TECO*, 2018 U.S. Dist. LEXIS 168518, at *2 ( "A member state is 'not permitted to examine . . . the ICSID tribunal's jurisdiction to render the award;' all it may do is 'examine the judgment's authenticity and enforce the obligations imposed by the award.'") (quoting *Mobil*, 863 F.3d at 102).

III.     *Forum Non Conveniens* **Does Not Apply To ICSID Award Enforcement**

Because, as set forth above, there is no legal basis for Spain's attempt to relitigate its jurisdictional objections to the Award before this Court, Spain's assertion that, "if there were any question about EU law and its application to this case, then the Court should dismiss under the doctrine of *forum non conveniens*" has no place here.  Br. at 26.

There are no questions of EU law before the Court.  Despite Spain's attempt to change the subject, all that is actually before the Court is an undisputedly authentic ICSID Award that is governed by a statute providing that such an award "shall" be enforced.  *See* 22 U.S.C. § 1650a. No other issues are properly before the Court because neither the FSIA nor Section 1650a leaves any room for them.  *See OI European Grp. B.V.*, 2019 U.S. Dist. LEXIS 85128, at *1 ( "[T]he Court may not re-examine the propriety of the award.").  All the Court may do is "examine the

---

[22] Contrary to Spain's argument, Br. at 23, ICSID Convention Article 55's provision that "[n]othing in Article 54 shall be construed as derogating from the law in force in any Contracting State relating to the immunity of that State or any foreign State from execution" does not change this.  Article 55 concerns immunity from **execution**, not **enforcement** of an Award.  Plaintiffs seek the former.  It follows that enforcement of the Award as a judgment of this Court is automatic, but that enforcement is without prejudice to Spain's ability later to attempt to argue that specific assets in the U.S. are shielded from attachment and execution under the FSIA.  This would be the case under either the New York or ICSID Conventions.  *See also* Second Yanos Decl. Ex. 16, Schreuer at 1153 ("Article 54 requires Contracting States to equate an award rendered pursuant to the Convention with a final judgment of its own courts.  It does not require them to go beyond that and to undertake forced execution of awards rendered pursuant to the Convention in cases in which final judgments could not be executed . . . Article 55 only applies to immunity from execution.") (internal citations omitted).

judgment's authenticity and enforce the obligations imposed by the award." *TECO*, 2018 U.S. Dist. LEXIS 168518, at *2 ("quoting *Mobil*, 863 F.3d at 102).

In addition, Spain's suggestion that the United States has "no interest" in resolving this case is wrong. Br. at 27. The federal courts recognize a strong public policy in favor of international arbitration generally. *See Belize Bank Ltd. v. Gov't of Belize*, 191 F. Supp. 3d 26, 36 (D.D.C. 2016) (noting "the strong public policy in favor of international arbitration" creates a heavy burden when challenging an award—even under the New York Convention). The United States has a strong interest in the effectiveness of Article 54 specifically. United States claimants have brought approximately 17% of the total cases instituted under the ICSID Convention and benefit from its robust international enforcement architecture.[23]

To the extent that Spain wishes to suggest that the Court be guided by prudential considerations, the prudent course lies in following the statutory command of Section 1650a and enforcing the Award. Doing so will not involve the Court in opining on the "intra-EU objection" but will simply carry out the United States' obligations under Article 54 of the ICSID Convention, the only relevant Treaty provision to which each of the United States, Spain and the United Kingdom is a party.[24]

---

[23] *See* Second Yanos Decl. Ex. 18, *Case Database*, ICSID WORLD BANK GROUP, (showing that, as of March 4, 2021, United States claimants have brought 125 of the 729 arbitrations governed by the ICSID Convention). *See also* Second Yanos Decl. Ex. 17, Statement of Lowenfeld, 5 ILM 820, 822 ("As the country with the greatest amount of international investment, and the greatest stake in the development and wide acceptance of international law standards regarding protection of private property, the United States stands to gain substantially from the Convention").

[24] The Court should be even more wary of engaging with the "intra-EU objection" in a case where the United Kingdom is no longer part of the EU. As of January 1, 2021, the United Kingdom is no longer a member of the EU. *See* Second Yanos Decl. Ex. 14, *Brexit: What you need to know about the UK leaving the EU*, BBC NEWS (Dec. 30, 2020). While the UK's withdrawal from the European Union should moot any "intra-EU objection" to enforcement of the Award, Section

In any event, the D.C. Circuit has repeatedly held that "the doctrine of *forum non conveniens* does not apply to actions in the United States to enforce arbitral awards against foreign nations." *BCB Holdings Ltd. v. Gov't of Belize*, 650 F. App'x 17, 19 (D.C. Cir. 2016) (citing *TMR Energy Ltd. v. State Property Fund of Ukr.*, 411 F.3d 296, 303–04 (D.C. Cir. 2005)).  Spain's *forum non conveniens* argument is thus "squarely foreclosed by [D.C. Circuit] precedent."  *Id.*

Spain's efforts to distinguish *TMR Energy Ltd. v. State Property Fund of Ukraine*, 411 F.3d 296 (D.C. Cir. 2005), fail.  Crucially, Spain ignores the subsequent decisions by both the D.C. Circuit and district courts recognizing that *TMR Energy*'s logic extends to the enforcement of awards as much as to their execution against property in the United States.  *See Belize Soc. Dev., Ltd. v. Gov't of Belize*, 794 F.3d 99, 105 (D.C. Cir. 2015) (affirming district court's dismissal in *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 5 F. Supp. 3d 25, 34 (D.D.C. 2013), of *forum non conveniens* in a proceeding to enforce an international arbitration award under the New York Convention); *Belize Bank Ltd.*, 191 F. Supp. 3d at 34 (refusing to apply *forum non conveniens* to a proceeding to enforce an international arbitration award under the New York Convention).[25]

---

1650a does not require a U.S. court to grapple with the legal implications of "Brexit" but simply to enforce the Award.

[25] The Second Circuit cases on which Spain relies cannot displace this Circuit's authority in *TMR*, *Belize Bank* and *Belize Social Development*. Spain's cases, moreover, were all decided under the New York Convention and the Federal Arbitration Act. Even the Second Circuit has not applied *forum non conveniens* in a case to enforce an ICSID Award under Section 1650a. But even if the Court were to consider those cases, they are easily distinguishable. Both cases featured the New York or Panama Conventions, which enjoy available defenses under the FAA. In *In Re Monegasque de Réassurance S.A.M. (Monde Re) v. Nak Naftogaz of Ukraine*, the Second Circuit weighed in on enforcement proceedings under the New York Convention and held that "[t]he doctrine of *forum non conveniens*, a procedural rule, may be applied in domestic arbitration cases brought under the provisions of the Federal Arbitration Act." 311 F.3d 488, 496 (2d Cir. 2002). But, of course ICSID awards are ***not*** subject to the FAA or the defenses outlined in the New York Convention. *See* 22 U.S.C. § 1650a(a) ("The [FAA] shall not apply to enforcement of awards rendered pursuant to the convention."); *see supra* Background, Section II.  Spain's reliance on *Figueiredo Ferraz e Enghenharia de Projeto Ltda. v. Republic of Peru*, 665 F.3d 384 (2d Cir.

That makes sense, because the availability of a plea of *forum non conveniens* would be fundamentally incompatible with the ICSID Convention's provisions concerning the international enforceability of awards under which, as Spain itself notes, "a claimant can seek enforcement of a valid award *in any contracting state*." Br. at 27 (emphasis added). Section 1650a accordingly not only allows for the enforcement of ICSID awards in the United States but also makes their enforcement nearly but automatic. *See* 22 U.S.C. § 1650a(a) (excluding the FAA and its defenses). Indeed, the legislative history of 22 U.S.C. § 1650a makes clear that Congress understood the statute it was enacting to be incompatible with a *forum non conveniens* defense because "[b]y becoming parties to the [ICSID] convention, states bind themselves to honor awards rendered pursuant to the convention, regardless of who the parties were to that arbitration. Thus, even if the arbitration was, for example, between a Canadian company and the Government of, say, Nigeria, an award would be binding and enforceable in the United States."[26] Section 1650a, in short, effectuates the United States' own Article 54 obligation to all ICSID Convention Contracting States to make ICSID awards readily enforceable.

## IV. The Foreign Sovereign Compulsion Doctrine Does Not Apply Because Spain Is Already Obligated To Comply With The Award.

Spain's attempt to invoke the Foreign Sovereign Compulsion doctrine to argue that the court "should refrain from entering an order that would compel a party to act in contravention of

---

2011), a case decided under the Panama Convention, 9 U.S.C. § 301 *et seq.*, is no more successful. *See also Termorio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 933 (D.C. Cir. 2007) (finding provisions of both the New York and Panama Conventions "substantively identical"). The Second Circuit in that case applied its earlier decision in *Monegasque* since the Panama Convention, like the New York Convention, is embedded within the FAA and incorporates doctrines applicable to domestic arbitration. Because neither the New York Convention nor the FAA applies to this case, there is no opening to import the doctrine of *forum non conveniens* into these proceedings

[26] *See*, *e.g.*, Second Yanos Decl. Ex. 17, Statement of Lowenfeld, 5 ILM at 823. *See also id.* at 824 (answering questions from a member of congress on this exact point).

the laws of a foreign sovereign," Br. at 23, also must fail given the express terms of the ICSID Convention. In particular, this Court's order enforcing the Award would not obligate Spain to do anything that it is not already obliged to do. Under Article 53 of the ICSID Convention Plaintiffs' ICSID award is final and binding. ICSID Convention, art. 53(1) ("The award shall be binding on the parties and shall not be subject to any appeal or to any other remedy except those provided for in this Convention."). It is thus *already* Spain's international law obligation to comply with an ICSID Award irrespective of whether this Court enforces it as a U.S. judgment.

Moreover, enforcing Plaintiffs' ICSID Award under Section 1650a will not actually force Spain to do anything. Enforcing the Award will simply allow Plaintiffs to make a demand to Spain for payment. If it refuses to do so, Plaintiffs will then have the opportunity to proceed to identify commercial Spanish assets in the United States and, if such assets are located, attach and execute the ensuing Judgment with the assistance and under the control of a different court in a different legal proceeding.

To be sure, courts have applied the sovereign compulsion doctrine to protect parties "likely to suffer severe sanctions for failing to comply with foreign law." But the cases cited by Spain in its brief arise in very different circumstances. In both *FTC v. Compagnie de Saint-Gobain-Pont-a-Mousson*, 636 F.2d 1300 (D.C. Cir. 1980) and *In re Sealed Case*, 825 F.2d 494 (D.C. Cir. 1987), the court's concern was with a private party's exposure to criminal liability under the a foreign blocking statute for complying with a U.S. court's subpoena.

Spain's position is not remotely analogous to that of a private party afraid of criminal prosecution by a sovereign. ***Spain*** is a sovereign State. It is the fourth-largest European Union member state by population and due to hold the Presidency of the European Union in 2023. Spain's interests are defended by a sophisticated diplomatic service, armed forces, and skilled

counsel at home and abroad.  No party so situated—no sovereign—has ever been excused from complying with a court order because of fear of compulsion from another sovereign.

Indeed, while insisting that it cannot pay the Award without authorization from the European Commission, Br. at 24, Spain raises a problem that it has made no attempt to resolve. In particular, Spain has shown neither that the European Commission would refuse to grant such permission, nor specified what "severe sanction" analogous to criminal liability it apprehends.[27] *See* Restat 4th, Frgn Rels Law of the U.S. - Juris., TD 3 Appx. § 222(a).   Spain in reality describes a political problem within the European Union system and one in respect of which it has ample means of protecting its interests.  Spain has not shown that the European Union could or would subject Spain to a "severe sanction" analogous to criminal prosecution if this Court were to enforce an ICSID Award rendered pursuant to a multilateral treaty to which both Spain and the European Union are parties—and as the Court is required to do under Section 1650a.

## V.   The Court Should Grant Summary Judgment In Favor Of Plaintiffs

With the Court's jurisdiction intact and Spain's Motion to Dismiss or Stay denied, the Court is equipped to rule on the Complaint.  Plaintiffs have presented a binding ICSID award rendered against Spain.  Spain does not contest the authenticity of the Award.  Under Section 1650a, the Court must enforce and give "the same full faith and credit as if the [A]ward were a final judgment."

---

[27] Neither Spain's brief nor Prof. Hindelgang's supporting declaration identify the nature of this "severe sanction."  The European Commission's intervention, in turn, suggests less that Spain fears something akin to criminal liability for complying with the Award, than that the European Commission is assisting its member states by providing an apparent rationale for defaulting on their international obligations to award creditors.

## <u>CONCLUSION</u>

For all these reasons, the Court should deny Spain's Motion to Dismiss the Complaint or

Stay the Proceeding, ECF No. 16.

Dated: March 12, 2021                              Respectfully submitted,

      New York, New York

                                                         _____

                                                         Alexander A. Yanos
      Carlos Ramos-Mrosovsky
      Rajat Rana
      Robert Poole, *pro hac vice*
      **ALSTON & BIRD LLP**
      90 Park Avenue
      New York, NY 10016
      Tel: 212-210-9400
      Fax: 212-210-9444
      alex.yanos@alston.com
      carlos.ramos-mrosovsky@alston.com
      rajat.rana@alston.com
      robert.poole@alston.com
      *Counsel for Plaintiffs InfraRed*
      *Environmental Infrastructure GP Limited,*
      *European Investments (Morón) 1 Limited,*
      *European Investments (Morón) 2 Limited,*
      *European Investments (Olivenza) 1 Limited,*
      *and European Investments (Olivenza) 2*
      *Limited*