**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **INFRARED ENVIRONMENTAL INFRASTRUCTURE GP LIMITED, et al.,**<br><br>  **Plaintiffs,**<br><br>  **v.**<br><br>**KINGDOM OF SPAIN,**<br><br>  **Defendant.** | **Civil Action No. 20-817 (JDB)** |

<u>**MEMORANDUM OPINION**</u>

Plaintiffs InfraRed Environmental Infrastructure GP Limited, European Investments (Morón) 1 Limited, European Investments (Morón) 2 Limited, European Investments (Olivenza) 1 Limited, and European Investments (Olivenza) 2 Limited bring this action to enforce an arbitral award issued to them by the International Centre for Settlement of Investment Disputes ("ICSID") against the Kingdom of Spain ("Spain"). Spain moves to dismiss the action on several grounds or, in the alternative, to stay the proceedings until its application to annul the arbitral award is resolved by the ICSID ad hoc Annulment Committee currently reviewing the award's validity. The European Commission ("EC") filed a brief as <u>amicus curiae</u> on behalf of the European Union ("EU") in support of Spain, claiming that EU law precludes ICSID jurisdiction over the dispute and thereby invalidates the ICSID award. Meanwhile, plaintiffs move for summary judgment, insisting that there is no dispute over the authenticity and enforceability of their ICSID award and that no further stay is warranted.

Thickly tangled legal issues beset resolution of this matter—including an apparent conflict between recent EU law and multiple treaty regimes, which no U.S. court has yet resolved.  Before addressing the merits of the parties' dispute, this Court will join the consensus of other judges in this District to face similar claims and stay the proceedings until the ICSID Annulment Committee has made its final determination.

## Background

Plaintiffs are private investment companies organized under the laws of the United Kingdom.  Compl. [ECF No. 1] ¶¶ 1–5.  Enticed by subsidies and favorable regulatory provisions enacted by the Spanish government to attract foreign investment in renewable energy, plaintiffs invested $31 million in Spanish solar powerplants in 2011.  Id. ¶¶ 19–20.  Thereafter, Spain's investor-friendly regulatory regime underwent changes that allegedly "adversely impacted the economics of Plaintiffs' investments in a manner contrary to the expectations on which Plaintiffs relied in making their investment," so plaintiffs sought relief.  Id. ¶ 21.  Simple enough, so far.

The complications of the crisscrossing legal regimes in play come into focus by following the path of plaintiffs' claims.  Their initial claim against Spain alleged a breach of Spain's duty to afford investors fair and equitable treatment pursuant to Article 10 of the Energy Charter Treaty ("ECT").  Id.  The ECT is a 1994 multilateral investment treaty between the EU, twenty-six EU member states including Spain and the United Kingdom,[1] and twenty-six non-EU countries.  Id. ¶¶ 17 & n.4 (citing The Energy Charter Treaty, Int'l Energy Charter (last updated Feb. 18, 2019), https://www.energycharter.org/process/energy-charter-treaty-1994/energy-charter-treaty/);  see also Pls.' Mem. in Opp'n to Def.'s Mot. to Dismiss Compl. or Stay Proceedings & in Supp. of Pls.' Mot for Summ. J. ("Pls.' Opp'n") [ECF No. 24] at 4.  The purpose of the ECT is to "promote

---

[1] At all times relevant to this case, the United Kingdom was an EU member state.

long-term cooperation in the energy field," ECT art. 2, Dec. 17, 1994, 2080 U.N.T.S. 100, pursuant to which every contracting state party must "encourage and create stable, equitable, favourable and transparent conditions for Investors of other Contracting Parties," id. art. 10.

Should a dispute arise under the ECT between an investor and a contracting state party, a number of mechanisms for resolution are available to investors under Article 26 of the treaty. Among other options, investors may submit their claims either "to the courts or administrative tribunals" of the contracting state party to the dispute, or "to international arbitration or conciliation." Id. art. 26(2)(a) & (3)(a). Indeed, paragraph 3 of Article 26 makes clear that, by joining the ECT, each state party "gives its unconditional consent to the submission of a dispute" to arbitration. Id. art. 26(3)(a). Among other international arbitral regimes, the ECT specifically enables investors to submit disputes for arbitration under the Convention on the Settlement of Investment Disputes between States and Nationals of Other States ("ICSID Convention")—the treaty establishing and governing ICSID arbitration. Id. art. 26(4)(a)(i). Where both the investor's home country and the state party to the dispute are parties to the ICSID Convention—as Spain, the United Kingdom, and the United States are and have been at all times relevant to this case, Compl. ¶¶ 13, 16—the aggrieved investor may through its written consent invoke ICSID arbitration to resolve its ECT-based dispute. ECT art. 26(4)(a)(i). Put differently, the state consent provision in paragraph 3 of Article 26 acts as a standing offer by state parties to arbitrate disputes which investors may accept by submitting their consent to arbitrate. See Mem. of Law in Supp. of Def.'s Mot. to Dismiss Compl. or Stay Proceeding ("Mot. to Dismiss") [ECF No. 16-1] at 1 ("Plaintiffs sought to initiate arbitration by accepting a purported offer to arbitrate in the [ECT].").

ICSID's jurisdiction extends to "any legal dispute arising directly out of an investment, between a Contracting State . . . and a national of another Contracting State, which the parties to

the dispute consent in writing to submit to [ICSID].  When the parties have given their consent, no party may withdraw its consent unilaterally."  Compl. ¶ 11 (quoting ICSID Convention [ECF No. 24-4] art. 25(1), Mar. 18, 1965, 575 U.N.T.S. 159).  Under the ECT, the offer-and-acceptance mechanism spelled out in Article 26 "satisf[ies] the requirement for[] . . . written consent of the parties to a dispute for purposes of . . . the ICSID Convention."  ECT art. 26(5)(a)(i).  And "[t]he awards of arbitration . . . shall be final and binding upon the parties to the dispute."  Id. art. 26(8).  On paper, then, the ECT sets out a clear path to submit investor–state disputes to ICSID for arbitration, and the parties here do not dispute that plaintiffs—at least as a formal matter of procedure—followed that path when they initiated arbitration against Spain on May 8, 2014.  See Mot. to Dismiss at 12.

On June 3, 2014, the ICSID Secretariat registered plaintiffs' request for arbitration.  See Compl. ¶ 22; InfraRed Env't Infrastructure GP Ltd. v. Kingdom of Spain, ICSID Case No. ARB/14/12 (June 3, 2014).  "Consistent with the ICSID Convention and the ICSID Arbitration Rules, a three-member Tribunal was constituted for the case," consisting of one arbitrator appointed by plaintiffs, one appointed by Spain, and one appointed by the ICSID Secretary-General.  Compl. ¶ 23.  The Tribunal collected written submissions from both sides, held a four-day hearing in Paris in April 2017, and awarded more than $30 million plus interest, costs, and fees to plaintiffs in August 2019.  Id. ¶¶ 24–25.

Spain applied to have the award annulled pursuant to Article 52 of the ICSID Convention in December 2019 arguing that ICSID lacked jurisdiction because Spain never entered into a valid agreement to arbitrate disputes arising under the ECT.  See Mot. to Dismiss at 13, 30.  On Spain's request, ICSID provisionally stayed enforcement of the award.  Pls.' Opp'n at 11 (citing Second Yanos Decl. Ex. 11, Decision on Continuation of Stay of Enforcement of Award (Oct. 27, 2020)

[ECF No. 24-12] ¶ 2).  ICSID then constituted an ad hoc Annulment Committee consisting of three

independent arbitrators who were not involved in the underlying arbitration.  See InfraRed Env't

Infrastructure GP Ltd. v. Kingdom of Spain, ICSID Case No. ARB/14/12, Procedural Details,

https://icsid.worldbank.org/en/Pages/cases/casedetail.aspx?CaseNo=ARB/14/12 (last visited June

29, 2021).  The Annulment Committee later lifted its provisional stay on the enforcement of the

award on the condition that plaintiffs comply with certain undertakings not to use, transfer, or

distribute any portion of the award collected prior to the final decision of the Annulment

Committee and to guarantee the return of all amounts collected from Spain pursuant to the award

in the event of annulment.  See Pls.' Opp'n at 12 (citing Second Yanos Decl. Ex. 13, Procedural

Order No. 7 on the Stay of Enforcement of Award (Feb. 12, 2021) [ECF No. 24-15] ¶ 8).[2]  But the

Annulment Committee has not yet made an ultimate determination on the merits; the annulment

proceedings are still ongoing.

During the pendency of the ICSID annulment proceedings, on March 25, 2020, plaintiffs

filed suit in this Court seeking to enforce the ICSID award against Spain.  As cited by plaintiffs,

Article 54(1) of the ICSID Convention requires "[e]ach Contracting State" to "recognize an award

rendered pursuant to [the ICSID] Convention as binding and enforce the pecuniary obligations

imposed by that award . . . as if it were a final judgment of a court in that state."  Compl. ¶ 12

(quoting ICSID Convention art. 54(1)).  The United States has been a signatory to the ICSID

Convention since 1966.  See id. ¶ 13.  And Congress codified Article 54(1) into U.S. law, providing

that "the pecuniary obligations imposed by" an arbitral award rendered under the ICSID

Convention "shall be enforced and shall be given the same full faith and credit as if the award were

a final judgment of a court of general jurisdiction of one of the several States," and exempting

---

[2] Throughout this Memorandum Opinion, these commitments upon which the Annulment Committee's
lifting of its provisional stay was conditioned will be referred to collectively as "plaintiffs' undertakings."

ICSID arbitration awards from the Federal Arbitration Act.  22 U.S.C. § 1650a(a).  Further, Congress gave the federal district courts exclusive jurisdiction over the enforcement of ICSID awards, id. § 1650a(b),[3] and provided that foreign sovereigns lose their immunity under the Foreign Sovereign Immunities Act ("FSIA") with respect to any suit filed to enforce an award rendered under "an agreement to arbitrate . . . governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards," 28 U.S.C. § 1605(a)(6).

At the parties' request, this Court stayed briefing in this case until the provisional stay was lifted by the ad hoc Annulment Committee.  See Joint Mot. & Status Report [ECF No. 14] (Jan. 8, 2021) at 2; Min. Order (Jan. 8, 2021).  Thereafter, Spain moved to dismiss the complaint on several grounds or, in the alternative, to stay the case further until the Annulment Committee reaches a decision.  Although Spain advances arguments under the foreign sovereign compulsion doctrine and forum non conveniens, see Mot. to Dismiss at 23–24, 26–30, the main thrust of its motion to dismiss is that binding EU caselaw precludes its purported consent to arbitrate disputes with EU-based investors arising under the ECT, rendering the entire ICSID arbitration void ab initio and divesting this Court of subject-matter jurisdiction, see id. at 16–23.  In the same vein, the EC filed an amicus brief on behalf of the EU in support of Spain's position, arguing that "[t]he award at issue is premised on a fundamental misinterpretation of the ECT and a disregard for EU law, which should have governed the dispute."  Br. of European Comm'n on Behalf of the European Union as Amicus Curiae in Supp. of Def. ("Amicus Br.") [ECF No. 22] at 2.  For their part, plaintiffs

---

[3] Approximately four months after plaintiffs filed their complaint in this Court, and in parallel to the ongoing annulment proceedings, Spain also requested that the ICSID tribunal that issued the award revise it.  See Pls.' Opp'n at 12 n.12 (citing Second Yanos Decl. Ex. 19, Decision on Claimants' Obj. Under ICSID Rule 41(5) to Resp't's Appl. for Revision ("Revision Decision") [ECF No. 24-20]).  Spain's application for revision was dismissed as "manifestly without legal merit" on March 8, 2021.  See Revision Decision ¶¶ 50–51, 64.

moved for summary judgment, arguing that "[b]ecause the Court has subject matter jurisdiction, and because Spain does not dispute service or challenge the authenticity of the Award, Section 1650a leaves only one role for the Court: to enforce the Award and extend it full faith and credit." Pls.' Mot. for Summ. J. [ECF No. 25] at 4.  The motions are now fully briefed and ripe for resolution.

To resolve the merits of Spain's motion to dismiss and plaintiffs' motion for summary judgment, this Court would almost certainly need to resolve—as a matter of first impression in the United States—the apparent conflict between EU law and the ECT/ICSID arbitration regime as to disputes between EU member states and EU investors.  Yet, if the Annulment Committee were to rule in Spain's favor, the Court will have acted for naught.  Hence, the Court will grant Spain's motion to stay this action and deny both its motion to dismiss and plaintiffs' motion for summary judgment without prejudice pending resolution of the annulment proceedings.

## Analysis

### I.    Subject-Matter Jurisdiction

The constitutional limitations on the powers of the federal courts of the United States impose "an independent obligation to determine whether subject-matter jurisdiction exists" before addressing the merits of a dispute.  Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006).  Yet before reaching the merits of a dispute, and prior to addressing jurisdiction a court may preliminarily address "certain non-merits, nonjurisdictional issues."  Pub. Citizen v. U.S. Dist. Court for the Dist. of Columbia, 486 F.3d 1342, 1348 (D.C. Cir. 2007) (citing Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007)); Sinochem, 549 U.S. at 431 ("[J]urisdiction is vital only if the court proposes to issue a judgment on the merits.").  "The stay of a petition to enforce an arbitration award is one such threshold issue that the Court may properly consider before

jurisdiction." <u>Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain</u>, 397 F. Supp. 3d 34, 38 (D.D.C. 2019).  Hence, it is appropriate to address the requested stay here.

## II.     Spain's Motion to Dismiss

Before doing so, it is helpful to elucidate the stakes of the fundamental legal disagreement between the parties.  Spain's arguments in favor of dismissal largely revolve around its assertion that "[t]here was no agreement to arbitrate because EU law precludes Spain from making an offer to arbitrate" with any national of an EU member state over any "matters that may require the interpretation or application of EU law."  Mot. to Dismiss at 16.  This assertion derives from the 2018 decision of the Court of Justice of the EU ("CJEU")—the EU's chief judicial authority—in <u>Slovak Republic v. Achmea B.V.</u>, CJEU Case No. C-248/16.  In <u>Achmea</u>, the CJEU held that EU law precludes any agreement by an EU member state to submit to arbitration against an investor from another EU member state, if such arbitration "may relate to the interpretation . . . of EU law." Hindelang Decl. Ex. 4, <u>Achmea</u> [ECF No. 16-7] ¶¶ 58–60.  This holding, Spain argues, renders "any putative offer to arbitrate" by Spain under Article 26(3) of the ECT "void <u>ab initio</u>."  Mot. to Dismiss at 7 (citing Hindelang Decl. ¶ 52).  Complicating Spain's position somewhat, the arbitral award struck down in <u>Achmea</u> arose under a bilateral investment treaty between two EU member states, not the multilateral ECT.  <u>See</u> <u>Achmea</u> ¶ 6.  And no European court has yet confirmed <u>Achmea</u>'s applicability to arbitrations brought under Article 26 of the ECT.  Still, the EU has itself asserted as much in this litigation, <u>see</u> Amicus Br. at 14–19, as have multiple EU member states and two Advocates General of the CJEU.  <u>See</u> Mot. to Dismiss at 8–9; Mem. of Law in Supp. of Def.'s Mot. to Dismiss ("Def.'s Reply") [ECF No. 27] at 6.

Assuming Spain is correct, the dominoes begin to fall.  If there was no agreement to arbitrate, the ICSID tribunal never had jurisdiction, its award is not enforceable, and therefore it is

not entitled to full faith and credit in this Court.  <u>See</u> Mot. to Dismiss at 25.  Moreover, absent an agreement to arbitrate, Spain maintains its immunity under the FSIA, leaving this Court without subject-matter jurisdiction to rule on the merits of the complaint.  <u>Id.</u> at 15 (noting that 28 U.S.C. § 1605(a)(6)'s arbitration exception only applies if there is "an agreement to arbitrate" between the parties).  But this Court cannot assume so much, and ruling in Spain's favor would directly— and prematurely—contradict the judgment of the ICSID tribunal.

Spain's attack on the validity of the arbitration was briefed in depth before the ICSID tribunal, which analyzed and ultimately rejected Spain's <u>Achmea</u>-based jurisdictional arguments. <u>See</u> Pls.' Opp'n at 8–9 (citing Yanos Decl. Ex. 1, Award [ECF No. 3-1] ¶¶ 159, 204–74).  The tribunal found that <u>Achmea</u> could not supersede the provisions of the ECT because the CJEU's authority was only binding "within the legal sphere of the [EU]" and its decision had "not met with the agreement of <u>all</u> ECT Contracting Parties."  Award ¶ 267.  Further, the tribunal found that <u>Achmea</u>'s central holding does not even apply to disputes like this one arising under the ECT because any "provisions of EU law" raised in conjunction with plaintiffs' claims "are not dispositive or even relevant to resolve the issues raised by this dispute."  <u>Id.</u> ¶ 272.  Spain's challenges to these findings remain pending before the Annulment Committee, which stands "empowered to annul the entirety of the Award" if it agrees with Spain's position.  Mot. to Dismiss at 30 (citing ICISD Convention art. 52(3)).  Conversely, then, denying Spain's motion on the merits and ruling in plaintiffs' favor also risks coming into direct conflict with the ultimate judgment of ICSID.  Like the other courts in this District that have addressed similar circumstances, this "[C]ourt is 'loath to wade into this territory unnecessarily.'"  <u>See</u> <u>9REN Holdings, S.A.R.L. v. Kingdom of Spain</u>, Civ. A. No. 19-cv-01871 (TSC), 2020 WL 5816012, at *3 (D.D.C. Sept. 30, 2020) (quoting <u>Masdar</u>, 397 F. Supp. 3d at 40).

### III.     Motion to Stay

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Id. at *2 (quoting Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)).  A court entertaining a motion to stay must "'weigh competing interests and maintain an even balance' between the court's interests in judicial economy and any possible hardship to the parties." Belize Soc. Dev. Ltd. v. Gov't of Belize, 668 F.3d 724, 732–33 (D.C. Cir. 2012) (quoting Landis, 299 U.S. at 254–55).   Ultimately, the burden rests with the party seeking a stay to demonstrate "a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." Philipp v. Fed. Republic of Germany, 253 F. Supp. 3d 84, 88 (D.D.C. 2017) (quoting Landis, 299 U.S. at 255).  But "both the D.C. Circuit and other courts in this district have determined it appropriate to stay [an arbitration enforcement] petition where there were ongoing proceedings related to the award in a foreign jurisdiction." Masdar, 397 F. Supp. 3d at 38–39 (citing, inter alia, Telcordia Techs., Inc. v. Telkom SA, Ltd., 95 Fed. App'x 361, 362–63 (D.C. Cir. 2004)).

As a threshold matter, this Court's interest in judicial economy favors staying these proceedings.  As discussed above, the questions of law being litigated before the ICSID Annulment Committee are largely identical to those at issue here.  "Litigating essentially the same issues in two separate forums is not in the interest of judicial economy or in the parties' best interests." 9REN, 2020 WL 5816012, at *2 (quoting Naegele v. Albers, 355 F. Supp. 2d 129, 141 (D.D.C. 2005)).  Moreover, this Court cannot predict the outcome of the parallel annulment proceedings, leaving open the possibility for conflicting judgments.  Any stay ordered now "would still likely be shorter than the possible delay that would occur if this Court were to confirm the award and the

[ICSID] were to then set it aside." Masdar, 397 F. Supp. 3d at 39 (quoting Matter of Arbitration of Certain Controversies Between Getma Int'l & Republic of Guinea, 142 F. Supp. 3d 110, 114 (D.D.C. 2015)).  Conversely, if the Annulment Committee affirms the award in spite of Spain's vigorous jurisdictional challenges—which track those presented here—this Court's judicial economy will be served "at a minimum, by virtue of the persuasive value" of yet another international tribunal's ruling on the matter.  See id. (quoting Hulley Enterps., Ltd. v. Russian Fed'n, 211 F. Supp. 3d 269, 284 (D.D.C. 2016)).

Militating perhaps even more strongly in favor of a stay are "considerations of comity," which "are particularly resonant here, given that resolving this case mandates addressing a conflict between decades-old treaties and newly minted EU case law." Id. at 40.  As discussed above, this Court would need to come down on one side or the other of an extremely high-stakes war of interpretation between the EU and several of its member states on one side and several ICSID tribunals and investors on the other.  Indeed, as Spain points out, there is yet another open front in this conflict: there are currently three cases pending before the CJEU which raise the question whether Achmea's reasoning applies to arbitration initiated under Article 26 of the ECT.  Def.'s Reply at 11; Hindelang Decl. ¶ 13.  As mentioned above, ICSID may not view the ultimate decision of the CJEU as binding on its arbitral jurisdiction, but the CJEU's decision may provide further persuasive authority to guide this Court's eventual resolution of these sensitive international questions.[4]  Meanwhile, there are at least six other actions to enforce arbitral awards against Spain currently pending in this District, and it is no coincidence that all of them have been stayed pending resolution of annulment proceedings.  See RREEF Infrastructre (G.P.) Ltd. V. Kingdom of Spain,

---

[4] This is not to say that the Court would continue to stay these proceedings to await a decision from the CJEU if the Annulment Committee were to issue its decision first.  At this time, Spain has not suggested that the Court await decisions from both bodies, and the stay issued pursuant to this Memorandum Opinion extends only as long as it takes for the Annulment Committee to act.

Civ. A. No. 19-3783 (CJN), 2021 WL 1226714, at *1 (D.D.C. Mar. 31, 2021); NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain, Civ. A. No. 19- 1618 (TSC), 2020 WL 5816238, at *1 (D.D.C. Sept. 30, 2020); 9REN, 2020 WL 5816012, at *1; Novenergia II – Energy & Environment (SCA) v. Kingdom of Spain, Civ. A. No. 18-1148 (TSC), 2020 WL 417794, at *1 (D.D.C. Jan. 27, 2020); Masdar, 397 F. Supp. 3d at 36; Infrastructure Servs. Lux. S.a.r.l. v. Kingdom of Spain, Civ. A. No. 18-1753 (EGS), 2019 WL 11320368, at *1 (D.D.C. Aug. 28, 2019).

Plaintiffs contest Spain's request for a further stay in this Court because "all other stays in Spain's annulment and revision proceedings have been lifted by the [ICSID] Tribunal and the Annulment Committee." Pls.' Opp'n at 14. Because the Annulment Committee has permitted conditional enforcement of the award pending its final decision, plaintiffs contend, this Court should likewise permit enforcement of the award in the United States. Plaintiffs insist that "there is no risk of prejudice to Spain" because, pursuant to the order of the Annulment Committee, plaintiffs have agreed to undertakings requiring them "not to use, and not to transfer or distribute . . . any amounts collected from the Kingdom of Spain under the Award," and to guarantee Spain's ability to recover any collected portions of the award in the event of annulment. Id. at 12, 15 (quoting Second Yanos Decl. Ex. 11, Decision on the Continuation of the Stay of Enforcement of the Award ¶ 199). According to plaintiffs, these undertakings, combined with the Annulment Committee lifting its stay of enforcement, distinguish this case from the other matters in this District that have been stayed. Pls.' Opp'n at 16.

Plaintiffs' undertakings may mitigate the potential prejudice to Spain that would arise out of a grant of summary judgment, but they do not eliminate it. Plaintiffs acknowledge that, if they were to prevail on summary judgment, they would require a further court order to attach Spanish assets identified in the United States. Id. at 15. That process alone would require Spain to further

litigate in this Court and would encumber whatever assets were ultimately attached, even if plaintiffs comply with their undertakings to the letter.  In the event of an ultimate annulment, Spain might need to pursue additional litigation to hold plaintiffs to their undertakings and recover any damages caused by the post-attachment, pre-annulment encumbrance of its assets.  Nor can the Court ignore the potentially chaotic ripple effects that might follow a grant of summary judgment to plaintiffs here through the other stayed enforcement actions pending against Spain in this District cited above.  Hence, the possibility certainly remains that "more expensive litigation involving more complex issues would result" if this Court were to reach the merits now.  Masdar, 397 F. Supp. 3d at 39 (quoting Getma Int'l, 142 F. Supp. 3d at 114).

Plaintiffs also overstate the significance of the Annulment Committee's decision to lift its stay on enforcement of the award.  For one, other courts in this District have rejected similar arguments and "issued stays, even where the ICSID lifted its stay on enforcing an award before issuing a decision in annulment proceedings."  NextEra Energy, 2020 WL 5816238, at *3; see also Min. Order, Infrastructure Servs. Lux. S.a.r.l. v. Kingdom of Spain, No. 1:18-cv-01753 (D.D.C. July 15, 2020); Unión Fenosa Gas, S.A. v. Arab Republic of Egypt, No. 18-cv-2395, 2020 WL 2996085, at *3–4 (D.D.C. June 4, 2020).  Moreover, ICSID's lifting of its stay also mitigates any prejudice to plaintiffs because they are now free to seek enforcement of the award during the pendency of the annulment proceedings, albeit without the involvement of this Court.  Meanwhile, plaintiffs' award will continue to collect interest at a rate of 2 percent, diminishing their possible hardship even further.  Mot. to Dismiss at 30–31 (citing Compl. ¶ 25(iii)).

The balance of hardships, then, favors a stay.  The Court recognizes plaintiffs' interest in the speedy resolution of their claims, but absent any concrete pecuniary harm to the award to which plaintiffs claim entitlement, staying the proceedings pending a decision from the Annulment

Committee will not inflict any harm that would outweigh the concrete hardship to Spain that might follow a potentially premature decision on the merits by this Court.  To ensure that this matter is resolved expeditiously as soon as the Annulment Committee issues its decision, the Court will require periodic updates from the parties on the progress of the annulment proceedings.

Finally, plaintiffs ask that the Court "in its discretion condition any stay on Spain's provision of a bond." Pls.' Opp'n at 17.  In support of this request, plaintiffs analogize the stay here to a stay of enforcement pending appeal under Federal Rule of Civil Procedure 62(b).  The analogy is not fitting.  Rule 62 deals with securing civil judgments that have already been issued by district courts.  See Fed. R. Civ. P. 62 (applying to "execution on a judgment and proceedings to enforce it").  Ordering Spain to provide a bond to secure the ICSID award as though it were a judgment of this Court would undermine the Court's decision not to rule on the validity of the ICSID award, as it would assume its validity.  Plaintiffs further state that "if this were a proceeding under the New York Convention or Panama Convention . . . , this court would have the power to condition the issuance of a stay on the posting of a suitable security." Pls.' Opp'n at 17 (citing Convention on the Recognition and Enforcement of Arbitral Awards ("New York Convention") art. VI, 330 U.N.T.S. 38 (1958) & Inter-American Convention on International Commercial Arbitration ("Panama Convention") art. 6, 1438 U.N.T.S. 245 (1975)).  It goes without saying this is not a proceeding under either of those conventions, and plaintiffs have not identified any provisions of the ICSID Convention or relevant U.S. federal cases that support their position.  Hence, the Court will not condition its stay on Spain's provision of a bond.

## Conclusion

For the foregoing reasons, the Court will deny both defendant's motion to dismiss and plaintiffs' motion for summary judgment without prejudice, and grant defendant's motion to stay

pending the decision of the ICSID Annulment Committee.  A separate Order shall issue on this date.

_____
/s/
JOHN D. BATES
United States District Judge

Dated:  June 29, 2021