UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
┌─────────────────────────────────────────┐
│ BLASKET RENEWABLE                         │
│ INVESTMENTS, LLC,                         │
│                                           │
│         Petitioner,                       │
│                                           │
│             v.                            │
│                                           │
│ KINGDOM OF SPAIN,                         │
│                                           │
│         Respondent.                       │
└─────────────────────────────────────────┘
```

Civil Action No. 20-817 (JDB)

## MEMORANDUM OPINION

An international arbitral tribunal formed pursuant to the International Convention on the Settlement of Investment Disputes awarded Blasket Renewable Investments LLC's predecessor in interest more than €28 million in damages, costs, and interest in its dispute with Spain over withdrawn renewable energy subsidies. Blasket's predecessor petitioned the Court for recognition and enforcement of the award. And in a prior opinion, the Court granted the petition. See Mem. Op. [ECF No. 83]. Now, the Court resolves an unsettled aspect of its judgment: the proper rate of postjudgment interest. Because the Court finds that postjudgment interest is an enforcement mechanism—not a pecuniary obligation due full faith and credit—it holds that 28 U.S.C. § 1961 provides the applicable interest rate here.

## BACKGROUND

The Convention on the Settlement of Investment Disputes Between States and Nationals of Other States, Aug. 27, 1965, T.I.A.S. No. 6090 (the ICSID Convention), supplies a forum for parties to international investment contracts to arbitrate disputes. See Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela, 87 F.4th 510, 514 (D.C. Cir. 2023). Each State signatory agrees to recognize arbitral awards under the Convention and "enforce the pecuniary obligations imposed

1

by [an ICSID] award within its territories as if it were a final judgment of a court in that State."
ICSID Convention, art. 54(1).  The Convention leaves execution of ICSID awards, however, to be
"governed by the laws . . . in the State in whose territories such execution is sought."  Id. art. 54(3).

After the United States ratified the Convention in 1965, Congress enacted the Convention
on the Settlement of Investment Disputes Act of 1966, Pub. L. No. 89-532, 80 Stat. 344 (codified
at 22 U.S.C. §§ 1650-1650a) (the ICSID Act).  The Act implemented the Convention by granting
awardees "a right arising under a treaty of the United States" and vesting federal courts with
exclusive jurisdiction over actions under the statute.  22 U.S.C. § 1650a.  Echoing the text of the
Convention, Congress provided that "[t]he pecuniary obligations imposed" by an ICSID award
"shall be given the same full faith and credit as if the award were a final judgment of a court of
general jurisdiction of one of the several States" and exempted ICSID awards from scrutiny under
the Federal Arbitration Act.  Id. § 1650a(a).

On August 2, 2019, an ICSID arbitral tribunal awarded InfraRed Environmental
Infrastructure GP Limited and four other companies (together, the InfraRed Investors) more than
€28 million in damages, costs, and interest in its dispute with Spain.  ICSID Tribunal Award [ECF
No. 3-1] at 168 ("Award").  The InfraRed Investors then petitioned this Court to recognize and
enforce the award.  See Compl. [ECF No. 1].  Following cross-motions for summary judgment,
the Court ruled for the InfraRed Investors' successor in interest, Blasket Renewable Investments,
LLC, and recognized the ICSID award.  Mem. Op. at 2, 20.  The Court also ordered the parties to
confer and file a proposed final judgment, including a current calculation of pre- and post-
judgment interest.  See Order [ECF No. 85] at 1.

The parties have now done so, reaching agreement on all but one aspect of the final
judgment: the applicable rate of postjudgment interest.  See Joint Status Report [ECF No. 86] at 2

("JSR"). Blasket maintains that postjudgment interest ought to accrue at the federal statutory rate specified in 28 U.S.C. § 1961. JSR at 3–4. Spain insists that the 2% post-award interest rate imposed by the ICSID tribunal from "the date of [the] Award to the date of payment" applies postjudgment. JSR at 8; Award at 168.

## ANALYSIS

To determine the applicable rate of postjudgment interest, the Court conducts a two-part inquiry. First, it resolves a threshold dispute—whether the merger doctrine applies to actions to enforce ICSID awards, extinguishing Spain's obligation to pay post-award interest at a rate of 2%. After concluding that the merger doctrine is inapposite, the Court next examines the sweep of Congress's command to give awards under the Convention full faith and credit. Guided by both the function of postjudgment interest and the text of the ICSID Act and Convention, the Court finds that postjudgment interest is an enforcement mechanism governed by forum law. Consequently, the Court holds that the federal statutory rate of postjudgment interest defined by § 1961 applies.

### I.    The Merger Doctrine is Inapposite

At the outset, Blasket asserts that the doctrine of merger cleanly resolves the parties' dispute. In Blasket's telling, the Court's judgment in this case extinguishes any rights or obligations the parties had under the award, including Spain's obligation to pay "post-award" interest at a rate of 2% compounding annually "until payment." See JSR at 5–6; Award at 168; Annulment Decision [ECF No. 52-2] at ¶ 815. And because the ICSID tribunal did not explicitly state that its post-award interest rate covers the postjudgment period, the § 1961 federal default rate must apply. See JSR at 8; Tricon Energy Ltd. v. Vinmar Int'l, Ltd., 718 F.3d 448, 459–60 (5th Cir. 2013) (holding that an arbitration award granting post-award interest at a specified rate

"until paid" is insufficiently "clear and unequivocal" to override the statutory default postjudgment rate). The Court is unpersuaded.

Under the merger doctrine, when a final judgment is entered in favor of a plaintiff, "the cause of action merges into the judgment, and [the] plaintiff may not thereafter maintain another suit on the same cause of action." Semler v. Psychiatric Inst. of Washington, Inc., 575 F.2d 922, 927 (D.C. Cir. 1978). Put more directly, the merger rule implements core principles of res judicata, preventing relitigation and claim splitting, by merging a plaintiff's claims into the court's judgment. See 18 Wright & Miller's Federal Practice & Procedure § 4402 (3d ed. updated 2025). So in an action to enforce a contract, the practical result of the merger rule is that obligations imposed by final judgment displace the parties' contractual obligations. 46 Am. Jur. 2d Judgments § 438 (2025) (explaining that "all of the prior contractual rights are merged into and extinguished by the judgment"); see also In re Riebesell, 586 F.3d 782, 794 (10th Cir. 2009) (applying the merger rule to find that contractual interest rates "disappear[] for post-judgment purposes").

Courts generally apply merger principles in suits to confirm arbitral awards, too. See, e.g., Bayer CropScience AG v. Dow Agrosciences LLC, 680 F. App'x 985, 1000 (Fed. Cir. 2017) (applying the merger rule in an action to confirm an arbitral award under the New York Convention); Tricon Energy, 718 F.3d at 458–60 (same). For good reason, as arbitral awards are a species of contract. See E. Associated Coal Corp. v. United Mine Workers, 531 U.S. 57, 62 (2000) (emphasizing that courts must treat arbitral awards as if they represented an agreement between the parties); Dist. No. 1, Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n v. Liberty Mar. Corp., 998 F.3d 449, 456 (D.C. Cir. 2021) (observing that "arbitration is a matter of contract" (citation omitted)). And it is through confirmation actions that courts transform arbitral awards

from pseudo contracts into sovereign, enforceable judgments.  See Amaplat Mauritius Ltd. v. Zim. Mining Dev. Corp., 143 F.4th 496, 502 (D.C. Cir. 2025).

Yet the ICSID Act mandates that federal courts afford ICSID awards the same full faith and credit as if they were judgments of the several States.  22 U.S.C. § 1650a(a).  So courts must "enforce" ICSID awards.  Id.; see also Cont'l Cas. Co. v. Argentine Republic, 893 F. Supp. 2d 747, 753 (E.D. Va. 2012).  But unlike arbitral awards under the Federal Arbitration Act and the New York Convention, ICSID awards are not subject to the scrutiny of confirmation proceedings. Contrast 9 U.S.C. § 207 (enabling parties to "confirm" awards under the New York Convention), with 22 U.S.C. § 1650a (enabling only "enforcement" of ICSID awards); see also Micula v. Gov't of Romania, 104 F. Supp. 3d 42, 50 (D.D.C. 2015) ("Congress was keenly aware that domestic arbitration awards could be confirmed, but elected not to use that procedure for ICSID awards"). Rather, the law regards ICSID awards as judgments in the first instance, not contracts requiring judicial imprimatur prior to enforcement.

Given the ICSID Act's instruction to treat ICSID awards as akin to state court judgments, not private agreements, the applicability of the merger doctrine is questionable.  Indeed, whether the merger doctrine applies in actions to enforce state court judgments is an issue of first impression. But examination of the implications of applying the doctrine in judgment enforcement actions clearly counsels against it.  To apply the merger doctrine in this context, a court must conclude that a plaintiff, by suing to enforce a judgment, extinguishes his rights under the judgment.  Yet such a result runs counter to the foundational principles of both claim preclusion, as implemented by the merger doctrine, and full faith and credit.

Begin with claim preclusion.  The general bar on relitigation and claim splitting promotes both efficiency and finality.  See Taylor v. Sturgell, 553 U.S. 880, 892 (2008).  But no such

efficiency or finality is gained by restricting a plaintiff's effort to collect on a valid, outstanding judgment to a single jurisdiction.  To the contrary, federal law promotes cross-jurisdiction judgment enforcement by expressly authorizing judgment creditors to register federal judgments "in any other district," 28 U.S.C. § 1963, without limitation to a single forum.  The Uniform Enforcement of Foreign Judgments Act, adopted by 48 states, also provides for filing and enforcement of out-of-state judgments, with no specified limit on the number of jurisdictions. Unif. Enf't. of Foreign J. Act § 2, 13.1 U.L.A. 210 (1964).

Against this backdrop, at least one federal court of appeals has concluded that "[r]es judicata itself (claim preclusion) is clearly inapplicable" in a consecutive suit to enforce an outstanding state judgment.  Nostalgia Network, Inc. v. Lockwood, 315 F.3d 717, 720 (7th Cir. 2002).  "Otherwise a judgment creditor would be unable to use separate proceedings to seize property of the debtor that might be scattered all over the country, or for that matter the world. What sense would that make?"  Id. at 720–21.  Where res judicata is inapposite, the Court declines to apply its outgrowth—the merger doctrine.

Full faith and credit, codified at 28 U.S.C. § 1738, corroborates this conclusion. Section 1738 "embodies concerns of comity and federalism" by requiring federal courts to give full faith and credit to state judicial proceedings.  Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985).  It would therefore be anomalous to conclude that federal enforcement pursuant to § 1738 supplants plaintiffs' rights under their original state judgments, extinguishing plaintiffs' ability to enforce them in their home or sister states.  See Villoldo v. Republic of Cuba, Civ. A. No. 21-2497, 2023 WL 5671493, at *5 (D. Colo. Sept. 1, 2023) (clarifying that while a district court may enforce a state judgment by entering "a judgment on a judgment," the federal judgment "does not . . . supersede the state court judgment").

6

The Court thus concludes that the merger doctrine is inapplicable in actions to enforce state court judgments. And the ICSID Act is clear: federal courts must give the same full faith and credit to ICSID awards as to state judgments. So the Court respectfully parts ways with its colleagues in this district who have assumed that because the merger doctrine applies in actions to confirm arbitral awards, it applies in actions to recognize and enforce ICSID awards. See Perenco Ecuador Ltd. v. Republic of Ecuador, Civ. A. No. 19-2943, 2023 WL 2536368, at *7 (D.D.C. Mar. 16, 2023); Tenaris, S.A. v. Bolivarian Republic of Venezuela, Civ. A. No. 18-01373, 2021 WL 1177996, at *2 (D.D.C. Mar. 29, 2021); O.I. Eur. Grp. B.V. v. Bolivarian Republic of Venezuela, Civ. A. No. 16-1533, 2019 WL 2185040, at *7 (D.D.C. May 21, 2019).

Instead, the Court holds that the merger doctrine does not apply to actions to enforce ICSID awards. See Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela, Civ. A. No. 19-46, 2022 WL 17370242, at *10 (D.D.C. Aug. 3, 2022), report and recommendation adopted on other grounds, 2023 WL 3453633 (D.D.C. May 15, 2023), aff'd, 87 F.4th 510 (D.C. Cir. 2023) ("The common-law principles of merger simply do not neatly fit an arbitral award that this Court must treat like a pre-existing state court judgment.").

## II.    Full Faith and Credit Does Not Encompass Postjudgment Interest

To interpret Congress's directive to give "[t]he pecuniary obligations imposed" by an ICSID award "the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States," 22 U.S.C. § 1650a(a), this Court looks to the Full Faith and Credit Statute, 28 U.S.C. § 1738, for guidance. The Supreme Court has construed courts' obligations under § 1738 to be both "exacting" and circumscribed. Baker v. Gen. Motors Corp., 522 U.S. 222, 233 (1998). "A final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition

throughout the land." Id. Still, courts need not "adopt the practices of other States regarding the time, manner, and mechanisms for enforcing judgments." Id. at 235; see also Bailey ex rel. McElmoyle v. Cohen, 38 U.S. 312, 325 (1839). Enforcement measures "remain subject to the evenhanded control of forum law." Baker, 522 U.S. at 235.

While the status of postjudgment interest presents a close question, the Court finds that it is an enforcement mechanism not owed full faith and credit under the ICSID Act. "The purpose of postjudgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 835–36 (1990) (citation modified). In other words, courts impose postjudgment interest not to punish or remedy an underlying harm but to ensure prompt and fair payment. See Overbeek v. Heimbecker, 101 F.3d 1225, 1228 (7th Cir. 1996). And in contrast to prejudgment interest, which is traditionally considered part of the judgment, postjudgment interest never turns on "matters encompassed within the merits" of the action. United States v. Great Am. Ins., 738 F.3d 1320, 1326 (Fed. Cir. 2013) (citation omitted); see also Georges v. OB-GYN Servs., 240 A.3d 249, 260 (Conn. 2020).

Two long running practices of the federal courts buttress the Court's determination that postjudgment interest is an enforcement mechanism not owed full faith and credit. First, when enforcing state court judgments, federal courts generally apply the § 1961 default interest rate. See Kirshner v. Smith, Civ. A. No. 23-397, 2024 WL 3640619, at *8, report and recommendation adopted, 2024 WL 3638901 (D. Vt. Aug. 2, 2024); N.C. Nat'l Bank v. Marden, 561 F. Supp. 698, 699 (W.D.N.C. 1983); Strategic Funding Source, Inc., v. Ron Boonkur, Civ. A. No. 25-5220, 2025 WL 3073089, at *8 (W.D. Wash. Nov. 4, 2025); but see Fifth Third Bank v. Monet, Civ. A. No.

12- 1074 (M.D. Tenn. Apr. 26, 2013), ECF No. 37.  This practice implies that state postjudgment interest rates are not due full faith and credit.

Second, federal courts sitting in diversity regard postjudgment interest rates as a "procedural" matter under Erie.  See, e.g., Walker v. Life Ins. Co. of N. Am., 59 F.4th 1176, 1194 (11th Cir. 2023); Art Midwest, Inc. v. Clapper, 805 F.3d 611, 615 (5th Cir. 2015); Cappiello v. ICD Publ'ns, Inc., 720 F.3d 109, 112 (2d Cir. 2013); Forest Sales Corp. v. Bedingfield, 881 F.2d 111, 113 (4th Cir. 1989).  To be sure, Erie and full faith and credit analyses are distinct, and the meaning of the terms "procedural" and "substantive" "is largely determined by the purposes for which the dichotomy is drawn." Sun Oil Co. v. Wortman, 486 U.S. 717, 726 (1988).  Nevertheless, the "procedural" designation under Erie clarifies that the federal rate may be imposed without harming uniformity and therefore supports the Court's determination that postjudgment interest is an enforcement mechanism, not a substantive obligation.

Spain resists this conclusion by contending that irrespective of whether the Full Faith and Credit Statute reaches postjudgment interest, the ICSID Act enlarges courts' full faith and credit duties to encompass all "pecuniary obligations," including postjudgment interest.  Resp't's Suppl. Br. [ECF No. 87] at 2–3; see also Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela, Civ. A. No. 14-8163, 2015 WL 926011, at *2 (S.D.N.Y. Mar. 4, 2015), vacated on other grounds, 863 F.3d 96 (2d Cir. 2017) (explaining that "[i]nterest is a 'pecuniary obligation'" because "'[p]ecuniary' means 'of, relating to, or consisting of money'" (quoting Pecuniary, Black's Law Dictionary (10th ed., 2014))).

The Court agrees with Spain and Mobil Cerro Negro that accrued interest is a pecuniary obligation.  But the Court is not persuaded that the term "pecuniary obligations" unambiguously includes postjudgment interest rates, which have no effect on the judgment amount when the

debtor immediately pays. Cf. Sunstone Realty Partners X LLC v. Bodell Constr. Co., 545 P.3d 260, 263–65 (Utah 2024) (reasoning that postjudgment interest rates are enforcement mechanisms under Utah's Foreign Judgment Act because they "have no effect on the judgment amount should a debtor decide to immediately pay . . .").

Furthermore, the Convention declares that the execution of ICSID awards is governed by the laws of the forum where execution is sought. ICSID, art. 54(3). So interpreting any ambiguity in § 1650a(a)'s reference to "pecuniary obligations" to encompass an enforcement mechanism, like postjudgment interest, would create a conflict between the Act and the Convention. Yet courts must, wherever possible, construe the Act consistent with the Convention. See Fund for Animals, Inc. v. Kempthorne, 472 F.3d 872, 878 (D.C. Cir. 2006) ("[A]n ambiguous statute should be construed where fairly possible not to abrogate a treaty.").

Finally, Spain's contention that failing to afford postjudgment interest rates full faith and credit would render the ICSID Act's reference to "pecuniary obligations" surplusage is also unavailing. JSR at 13. The Court sees a different function for the ICSID Act's reference to "pecuniary obligations," namely, restricting the kinds of relief owed full faith and credit under the Act. While some equitable decrees fall within the domain of the Full Faith and Credit Clause and Statute, Baker, 522 U.S. at 234, the ICSID Act's reference to pecuniary obligations clarifies that courts need not enforce an ICSID tribunal's award of nonpecuniary equitable relief.

The Court therefore concludes that postjudgment interest is a judgment enforcement mechanism, not a "pecuniary obligation" owed full faith and credit under the ICSID Act. As a result, 28 U.S.C. § 1961's postjudgment interest rate applies here.[1]

---

[1] Spain does not advance, and this Court does not adopt, the proposition that § 1961 cannot apply to actions to enforce ICSID awards. See Valores Mundiales, S.L., 2022 WL 17370242, at *11 (recommending that the district court apply the post-award rate because "[Section] 1961 does not apply to ICSID awards at all."). By its terms,

**CONCLUSION**

For these reasons, the Court enters final judgment entitling Blasket to post-judgment

interest at the federal statutory rate provided by 28 U.S.C. § 1961.  A separate order has been

issued on this date.

/s/

JOHN D. BATES
United States District Judge

Dated: <u>November 24, 2025</u>

---

Section 1961 supplies the default postjudgment interest rate for "any money judgment in a civil case recovered in a district court," including judgments entered in actions to recognize and enforce judgments.