**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BLASKET RENEWABLE INVESTMENTS, LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 20-817 (JDB) |
| KINGDOM OF SPAIN, | |
| Defendant. | |

**MEMORANDUM OPINION**

On November 24, 2025, the Court recognized Blasket Renewable Investment's foreign arbitral award against the Kingdom of Spain and entered a $47,614,158.41 final judgment in favor of Blasket.  Now, Blasket seeks the Court's permission to begin enforcing the judgment and registering it in other federal districts.  Spain opposes Blasket's motion and cross-moves for a stay of judgment enforcement proceedings and discovery.  It also requests that the Court quash third-party subpoenas Blasket has issued seeking information about Spain's assets.

For the reasons given below, the Court grants Blasket's motion to commence judgment enforcement proceedings and register its judgment in other districts, and the Court denies Spain's motion for a stay.  Finally, because the parties' dispute over the third-party subpoenas is not yet ripe, the Court does not resolve it today.

**BACKGROUND**

Lured by subsidies and other inducements, many renewable-energy firms invested in infrastructure projects in Spain in the late 2000s and early 2010s.  Clifford J. Hendel & María Antonia Pérez, The Past, Present and Possible Future of the Spanish Renewable Energy Arbitration Saga, 31 Int'l L. Practicum 96, 96 (2018).  But after the Great Recession, Spain enacted a series

1

of laws scaling back the financial incentives. Id. at 96–97. Stung by the policy shift, international investment firms initiated arbitration actions, alleging Spain had violated its obligations under the Energy Charter Treaty, a multilateral treaty aimed at protecting foreign investment in the energy sector. Id. Among those firms were the Infrared Investors, five United Kingdom-based predecessors in interest to plaintiff Blasket Renewable Investments. Blasket Renewable Invs., LLC v. Kingdom of Spain (Blasket II), Civ. A. No. 20-817, 2025 WL 2336428, at *2–4 (D.D.C. Aug. 13, 2025); Arbitral Award [ECF No. 3-1] ¶¶ 1, 6, 9.

Because both Spain and the United Kingdom were signatories of the Convention on the Settlement of Investment Disputes Between States and Nationals of Other States (the ICSID Convention), the Energy Charter Treaty funneled the Infrared Investors' claims to an arbitral tribunal established under the ICSID Convention. Arbitral Award ¶¶ 260–261 (citing Energy Charter Treaty, art. 26 ¶ 4(a)(i), opened for signature Dec. 17, 1994, 2080 U.N.T.S. 95). After five years of arbitral proceedings—including extensive litigation of the ICSID tribunal's jurisdiction—the tribunal found that Spain had breached its obligations under the Energy Charter Treaty and awarded the Infrared Investors €28,200,000, pre- and post-award interest, costs, and fees (the Award). Arbitral Award at 41, 55–87, 166–67. The Award was one of many that ICSID tribunals entered against Spain for violations of the Energy Charter Treaty.[1]

The Infrared Investors then sued in this Court, seeking recognition and enforcement of the Award within the United States. Compl. [ECF No. 1]. But this case sat on ice for nearly five years, as Spain unsuccessfully pursued annulment proceedings before an ad hoc ICSID committee

---

[1] See, e.g., NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain, Civ. A. No. 23-7031, 2024 WL 4940503, at *1 (D.C. Cir. Dec. 2, 2024); 9Ren Holdings S.À.R.L. v. Kingdom of Spain, Civ. A. No. 19-1871, 2025 WL 2779795, at *1 (D.D.C. Sept. 29, 2025); Cube Infrastructure Fund SICAV v. Kingdom of Spain, Civ. A. No. 20-1708, 2025 WL 2374517, at *2 (D.D.C. Aug. 14, 2025); Infrastructure Servs. Luxembourg S.A.R.L. v. Kingdom of Spain, Civ. A. No. 18-1753, 2025 WL 2320406, at *2 (D.D.C. Aug. 12, 2025).

and appealed the recognition and enforcement of three other ICSID awards to the D.C. Circuit. Blasket II, 2025 WL 2336428, at *4. After the D.C. Circuit rejected Spain's assertions of sovereign immunity in those parallel cases, NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain, 112 F.4th 1088, 1111 (D.C. Cir. 2024), rehr'g en banc denied, No. 23-7031, 2024 WL 4940503, Spain petitioned the Supreme Court for a writ of certiorari, Petition for Writ of Certiorari, No. 24-1130 (filed May 1, 2025). That petition remains pending.

Meanwhile, Spain also challenged the arbitration awards against it within Europe—with some success. Spain obtained a decision from the European Commission in the Spring of 2025 declaring payment of another ICSID award against it unlawful. 2025 O.J. (L 1235) ¶ 190 (Mar. 24, 2025) [hereinafter the Antin Decision]; see also Blasket II, 2025 WL 2336428, at *9 n.12. In the Antin Decision, the European Commission reasoned that EU law prohibits the Energy Charter Treaty from channeling intra-EU investor-State disputes to arbitration—so the ICSID tribunal lacked jurisdiction to adjudicate the Antin dispute. Antin Decision ¶¶ 8, 73, 254, 278. That Spain and the Antin investors' home country were both signatories of the Energy Charter Treaty was immaterial.

The European Commission also found that because the Antin award compensated investors for damages they incurred from lost subsidies, the award constituted "state aid," defined as aid that "distorts or threatens to distort competition by favouring certain undertakings . . . ." Id. ¶¶ 183, 236. Under EU law, no member state may pay state aid unless the Commission authorizes the aid as compatible with the internal market. See id. ¶¶ 73, 250. Spain, perhaps unsurprisingly, did not defend the award's compatibility with the internal market. Id. ¶ 251. And the European Commission reasoned that because the Antin award was unlawful it was, by definition, incompatible with the internal market. Id. ¶¶ 254, 278.

3

Complicating matters in this case, the European Commission did more than bar enforcement of the Antin award within the EU.  It also forbade Spain from voluntarily paying or implementing the Antin award "before a court of a . . . third country."  Id. ¶ 190.  The Commission defined implementing the award to include "fail[ing] to prevent seizure" of Spain's assets, and directed Spain "to take all appropriate measures to prevent . . . recognition, enforcement or execution of the Award . . . ."  Id. ¶¶ 190, 285; see also Blasket II, 2025 WL 2336428, at *9 n.12.

Back on this side of the pond, the Court unstayed this case following the D.C. Circuit's rejection of Spain's assertion of sovereign immunity in NextEra, and the parties cross-moved for summary judgment.  Min. Order (Dec. 19, 2024); Def.'s Summ. J. Mot. [ECF No. 74]; Pl.'s Summ. J. Mot. [ECF No. 78].  Spain contended that the Court could not recognize the Award because the ICSID tribunal lacked jurisdiction over the dispute, and recognizing the Award would contravene the principles of comity underlying the foreign sovereign compulsion doctrine.  Blasket II, 2025 WL 2336428, at *1.  This Court rejected both arguments.

As to the ICSID tribunal's jurisdiction, the Court reasoned that the ICSID Convention and its implementing statute, 22 U.S.C. § 1650a, require federal courts to give full faith and credit to ICSID awards, as if those awards were the final judgments of a court of general jurisdiction of one of the several States.  Blasket II, 2025 WL 2336428, at *5 (citing Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela, 87 F.4th 510, 514 (D.C. Cir. 2023)).  So the Court could not reopen jurisdictional issues the parties had already fully and fairly litigated before the ICSID tribunal.  Id. at *6 (citing Underwriters Nat'l Assur. Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n, 455 U.S. 691, 706 (1982)).

Nor could the Court read a comity exception into § 1650a's "exacting obligations"— because what comity required was adherence to the letter of the ICSID Convention and its

domestic implementing statute.  Id. at *8–9 (citing Hilton v. Guyot, 159 U.S. 113, 164 (1895)). Finally, the Court expressed skepticism that recognition and enforcement of the Award would necessarily expose Spain to EU sanctions.  Id. at *9.  The Court detailed the long chain of events required before Spain could face sanctions for complying with the Court's orders.  Id.  And it observed that even if the European Commission ultimately found payment of the Award to be unlawful state aid, both the Commission and the Court of Justice of the European Union possess broad discretion to decide whether to pursue sanctions against Spain—a kingdom stuck "between the proverbial rock of a United States judgment and hard place of EU law."  Id. at *9–10.

Faithfully applying Congress's directive to give ICSID awards full faith and credit, the Court granted Blasket's cross-motion for summary judgment and recognized the Award.  Id. at *10.  The Court subsequently determined that 28 U.S.C. § 1961 supplied the appropriate rate of post-judgment interest.  Blasket Renewable Invs., LLC v. Kingdom of Spain (Blasket III), Civ. A. No. 20-817, 2025 WL 3268233, at *6 (D.D.C. Nov. 24, 2025).  And on November 24, 2025—five years after Blasket's predecessors in interest commenced this action and more than ten years after the underlying breach—the Court entered a $47,614,158.41 final judgment in favor of Blasket. Final J. [ECF No. 92].

Now, Blasket seeks the Court's permission to begin enforcing the judgment, registering it in other federal districts, and attaching Spain's assets.  See Pl.'s Mot. to Enforce J. (Pl.'s Mot.) [ECF No. 98-1].  And Blasket has subpoenaed law firms, banks, and companies doing business with Spain's national soccer team, seeking information about Spain's assets.  Spain opposes Blasket's motion and cross-moves for a stay of judgment enforcement and post-judgment discovery; Spain also requests that the Court quash Blasket's subpoenas.  Def.'s Mot. to Stay and Quash (Def.'s Mot.) [ECF No. 103-1], Def.'s 2d Mot. to Quash [ECF No. 107-1].

Because a reasonable period of time has elapsed since the Court entered the judgment against Spain, and because a stay of judgment enforcement proceedings would endanger Blasket's interests in recovery, the Court grants Blasket's motions to begin judgment enforcement proceedings and denies Spain's cross-motion for a stay. The Court does not reach Spain's motions to quash the third-party subpoenas, however, because they are not yet ripe.

## ANALYSIS

### I.    Blasket May Begin Enforcing Its Judgment

Blasket seeks the Court's permission to commence judgment enforcement proceedings against Spain, and to register its judgment in other federal districts, while Spain opposes Blasket's motion and cross-moves for a stay of judgment enforcement proceedings. The Court first considers Spain's motion to stay, and then evaluates whether Blasket has met the statutory requirements to begin enforcing the judgment and registering it in other districts.

### A.   Spain's Motion for an Unbonded Stay of Judgment Enforcement

A foreign sovereign, like any judgment-debtor, may obtain a stay of judgment enforcement proceedings as a matter of right by posting a bond supersedeas or other security for the pendency of its appeal. Am. Mfrs. Mut. Ins. v. Am. Broad.-Paramount Theatres, Inc., 87 S. Ct. 1, 3 (1966) (Harlan, J., in chambers) (citing Fed. R. Civ. P. 62); Doraleh Container Terminal SA v. Republic of Djibouti, Civ. A. No. 20-2571, 2023 WL 12004450, at *1 (D.D.C. Apr. 24, 2023).

Judgment-debtors seeking unbonded stays have a much tougher hill to climb. Because a stay of a district court's judgment "operates for the appellant's benefit and deprives the appellee of the immediate benefits of his judgment," a full supersedeas bond is required for a stay in normal circumstances. Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n, 636 F.2d 755, 760 (D.C. Cir. 1980). District courts may authorize unsecured or partially secured stays only in "unusual circumstances," where an unsecured stay will not "unduly endanger the judgment creditor's

interest in ultimate recovery." Id. at 760–61; see also 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2905 (3d ed.) ("[T]he burden is on the party seeking a waiver [of the bond requirement] to demonstrate that the judgment is not at risk . . . .").[2]  And courts assess the impact of an unbonded stay on a judgment creditor's interests pragmatically, taking into account the judgment amount, the debtor's ability to pay, and the debtor's ability to evade enforcement efforts.  See Fed. Prescription Serv., 636 F.2d at 761.

The Court denies Spain's motion to stay judgment enforcement because a stay in this case would endanger Blasket's interests in full recovery.  At baseline, plaintiffs attempting to enforce a judgment against a sovereign state must travel a long and difficult trail.  Agudas Chasidei Chabad of U.S. v. Russian Fed'n, 798 F. Supp. 2d 260, 274 (D.D.C. 2011).  The execution immunity provisions of the Foreign Sovereign Immunities Act (FSIA) substantially limit the assets judgment-creditors may attach.  See Doraleh Container Terminal SA, 2023 WL 12004450, at *3; see also 28 U.S.C. §§ 1609–11 (generally restricting attachable property to property located in the United States and used for commercial purposes).  As a result, judgment-creditors often struggle to recover judgments against even sovereign states with deep coffers, like Spain.  And Blasket is only one of a long list of creditors looking to attach Spain's limited pool of nonimmune assets within the United States.  See supra, at 2 n.1.  Staying enforcement of the Court's judgment would therefore imperil Blasket's place in line and its ultimate recovery.[3]  See Blasket Renewable Invs.,

---

[2] Contrary to Spain's assertion, see Def.'s Reply [ECF No. 109] at 5, the D.C. Circuit does not require evidence of the judgment-debtor's intent to leave the jurisdiction before denying its motion to stay judgment enforcement.  Intent to leave the jurisdiction is just one factor in a broader assessment of whether "there is some reasonable likelihood of the judgment debtor's inability or unwillingness to satisfy the judgment in full upon ultimate disposition of the case."  Fed. Prescription Serv., 636 F.2d at 760.

[3] Spain asserts that only one other creditor has sought post-judgment discovery from it, Def.'s Mot. at 18 n.8, and that if others were to begin judgment enforcement efforts, it would simply inform Blasket.  But Spain's proposal is a nonstarter because waiting for another creditor to begin judgment enforcement efforts before allowing Blasket to do so would inherently impair Blasket's interests relative to the other creditor.

LLC v. Kingdom of Spain, Civ. A. No. 20-1081, 2026 WL 1236125, at *6 (D.D.C. Apr. 10, 2026) [hereinafter Watkins[4]].

To be sure, the Court recognizes the difficulty of Spain's position. The conflict between the United States's and the EU's implementation of the ICSID Convention, and Spain's concomitant inability to post a bond supersedeas, may even present "unusual circumstances."[5] But these are unusual circumstances that endanger Blasket's interests in ultimate recovery. So an unsecured stay is inappropriate here, and the Court denies Spain's motion.[6]

---

[4] Blasket Renewable Invs., LLC v. Kingdom of Spain, Civ. A. No. 20-1081, arises out of a dispute between Spain, Watkins Holdings S.à r.l., and Watkins (Ned) BV. 2025 WL 3516146, at *1 (D.D.C. Sept. 11, 2025). Blasket acquired the interests of the Watkins investors in 2024. Id.

[5] The Court disagrees, however, with Spain's assertion that its pending appeal in the D.C. Circuit, and the Supreme Court's call for the views of the Solicitor General on its petition for certiorari, constitute unusual circumstances. Def.'s Mot. at 6–10. This Circuit's unbonded stay standard assumes a pending appeal as a normal circumstance, not an unusual one. See Fed. Prescription Serv., 636 F.2d at 760. So the fact of Spain's appeals, and the Supreme Court's modest expression of interest in allowing them to proceed, is not relevant to the Court's analysis of the propriety of an unbonded stay. To find otherwise would "obliterate the bond requirement." Watkins, 2026 WL 1236125, *5.

[6] Spain also argues that it is entitled to an unsecured stay under the traditional stay factors articulated in Nken v. Holder, 556 U.S. 418, 434 (2009). In two unpublished decisions, the D.C. Circuit has implied that these stay factors may be relevant, although the Circuit has not elucidated how they bear on the inquiry. Klayman v. Jud. Watch, Inc., No. 19-7105, 2019 WL 5394644, at *1 (D.C. Cir. Oct. 21, 2019) (denying unbonded stay because the appellee's interests would not be adequately protected and the appellant had not satisfied the stringent requirements of the Nken stay factors); TMR Energy, Ltd. v. State Prop. Fund of Ukr., No. 03-7191, 2004 U.S. App. LEXIS 8195, at *1 (D.C. Cir. Apr. 23, 2004) (same). But see Doraleh Container Terminal SA, 2023 WL 12004450, at *2 ("No such alternative test is referenced in Federal Prescription, which sets out the governing standard in this Circuit for an unbonded stay.").

Assuming the Nken stay factors can supply judgement-debtors with an alternative route to obtain an unsecured stay, the factors nonetheless do not support a stay here. Spain's assertions of sovereign immunity have been roundly and repeatedly rejected throughout this Circuit, so it appears unlikely that Spain will succeed on the merits of its appeals. And while the Supreme Court has sought the Solicitor General's views on Spain's petition for certiorari, the chances of the Court granting the petition—much less reversing the D.C. Circuit and finding for Spain on the merits—are below 50%. See Paul R. Gugliuzza, The Supreme Court Bar at the Bar of Patents, 95 Notre Dame L. Rev. 1233, 1253 (2020) (finding that between 2002 and 2016 the Supreme Court granted 45.1% of the petitions for certiorari on which it called for the views of the Solicitor General). Moreover, for the reasons this Court has already explained, a stay may substantially harm Blasket's interests relative to Spain's other creditors. And allowing Blasket to enforce its judgment serves the public's interests in compliance with international treaties and efficient resolution and enforcement of arbitration awards. Together, these factors far outweigh the remote possibility that Spain could suffer a modest but nevertheless irreparable injury from defending against judgment enforcement proceedings.

### B.  Blasket's Motion to Begin Executing its Judgment

Next, the Court turns to Blasket's motion for an order, pursuant to 28 U.S.C. § 1610(c), authorizing it to initiate execution and attachment proceedings against Spain.

Section 1610(c) of the FSIA provides that judgment-creditors must seek the court's permission before executing a judgment against a foreign state, including by bringing attachment proceedings against a foreign state's U.S.-based property.  28 U.S.C. § 1610(c).  Under this provision, a court must determine that "a reasonable period of time has elapsed following the entry of judgment" before granting a judgment-creditor's motion to begin execution proceedings against a foreign sovereign.  Id.[7]

Although § 1610(c) "provides no express guidance on how to assess whether a period is 'reasonable,'" Owens v. Republic of Sudan, 141 F. Supp. 3d 1, 8 (D.D.C. 2015), courts typically analyze whether the foreign state has had "sufficient time to evaluate and consider responses" to the judgment, Agudas Chasidei Chabad of U.S., 798 F. Supp. 2d at 270.  If so, courts consider whether the state has taken steps towards paying the judgment, or alternatively has acted to evade its obligations.  And where a state is actively working towards payment—for instance by passing legislation to appropriate funds—courts gauge whether enough time has elapsed to enable the state to do so.  Owens, 141 F. Supp. 3d at 8; Ned Chartering & Trading, Inc. v. Republic of Pakistan, 130 F. Supp. 2d 64, 67 (D.D.C. 2001).

In absolute terms, a period of three months generally satisfies § 1610(c)'s reasonable time requirement, especially where the judgment-debtor offers no evidence that it is making efforts to pay.  Omni Bridgeway Ltd. v. Ministry of Infrastructure & Energy of Republic of Alb., Civ. A.

---

[7] In the case of a default judgment against a foreign state, judgement-creditors must also serve the default judgment on the foreign state in accordance with the procedures of 28 U.S.C. § 1608(a) before they may begin executing the judgment or attaching the state's assets.  Id. §§ 1610(c), 1608(e).

No. 23-1938, 2026 WL 632483, at *4 (D.D.C. Mar. 6, 2026); <u>Eurofinsa, S.A. v. Gabonese Republic</u>, Civ. A. No. 23-3013, 2025 WL 1650493, at *3 (D.D.C. June 11, 2025).

A reasonable period of time has elapsed following the Court's entry of judgment in this case. Nearly one year has passed since the Court recognized the Award and five months have passed since the Court entered final judgment. Neither event should have blindsided Spain, which has unsuccessfully defended numerous ICSID enforcement actions in this district over the last decade. Spain has therefore had more than sufficient time to weigh its response to the Court's judgment.

Indeed, Spain has clearly determined its post-judgment strategy. Because Spain believes—perhaps reasonably—that EU law precludes it from paying the judgment, it broadly opposes Blasket's enforcement efforts. <u>See</u> Def.'s Mot. at 1, 16; Def.'s Reply at 11; Decl. of M.B. Jackson [ECF No. 103-2] ¶ 30. Consistent with this position, Spain has offered no evidence that it has taken steps, legislative or otherwise, to pay the judgment. And while the Court appreciates the difficulty of Spain's position, it also recognizes the unexplored avenues available to Spain. If Spain wished to satisfy the judgment, it could request permission to pay from the European Commission, as it did in <u>JGC Holdings Corp. v. Kingdom of Spain</u>. <u>See</u> Letter Re: <u>JGC Holdings</u> [ECF No. 105-2] at 1. Or it could notify the European Commission of the judgment in this case and defend it as lawful. <u>Cf.</u> Antin Decision ¶¶ 1, 248, 251. To date, Spain has not submitted any evidence to the Court that it has done either.

In a rerun of its unavailing arguments for a stay, Spain protests that a reasonable period has not passed because it has a pending appeal before the D.C. Circuit and has petitioned the Supreme Court for certiorari in a related case. But the possibility or pendency of an appeal is immaterial to the Court's analysis because § 1610(c) speaks only in terms of "time," not procedural checkpoints.

10

Owens, 141 F. Supp. 3d at 10–11; Wye Oak Tech., Inc. v. Republic of Iraq, Civ. A. No. 10-1182, 2023 WL 7112801, at *3 (D.D.C. Oct. 27, 2023).  And as this court discussed previously, a judgement-debtor has a separate mechanism for forestalling execution of a judgment against it while it appeals—a supersedeas bond.  Fed. R. Civ. P. 62(b).

Five months have passed since the Court entered the judgment against Spain and Spain has taken no steps that evince its intent to pay.  The Court therefore concludes that a reasonable period of time has elapsed and grants Blasket's § 1610(c) motion for an order authorizing it to begin judgment enforcement proceedings against Spain.

### C. Blasket's Motion to Register Its Judgment in Other Federal Districts

Blasket also seeks the Court's permission to register the judgment in other federal districts where Spain may have assets, explaining that Spain likely has insufficient attachable assets in the District of Columbia to satisfy the judgment.  Pl.'s Mot. at 6.

A district court judgment for the recovery of money or property "may be registered by filing a certified copy of the judgment in any other district . . . when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown."  28 U.S.C. § 1963.  Good cause is a flexible standard and may be established in several different ways.  Wye Oak Tech., Inc., 2023 WL 7112801, at *4.  But courts will generally find that a judgment-creditor has good cause to register a judgment in any other federal district when the defendant has (1) refused or failed to post a supersedeas bond, (2) "an absence of assets in the judgment forum," and (3) "substantial assets in other forums."  Chevron Corp. v. Republic of Ecuador, 987 F. Supp. 2d 82, 85 (D.D.C. 2013); see also Non-Dietary Exposure Task Force v. Tagros Chems. India, Ltd., 309 F.R.D. 66, 69 (D.D.C. 2015).  And courts are especially likely to find good cause when the creditor also offers evidence that the

11

judgment-debtor has mobile assets in other jurisdictions.  Chevron Corp., 987 F. Supp. 2d at 85; Wye Oak Tech., Inc., 2023 WL 7112801, at *4.

Neither party disputes that Spain has refused to post a supersedeas bond and lacks sufficient assets in the District of Columbia to satisfy the judgment.  Pl.'s Mot. at 7–8; Def.'s Mot. at 20, 31–33.  Moreover, Blasket has reason to believe that Spain's sovereign wealth fund has substantial moveable assets in the Southern District of New York.  Pl.'s Mot. at 8.  The Court therefore grants Blasket's motion for permission to register its judgment in other federal district courts.

## II.    Discovery Disputes

In addition to its cross-motion for a stay of judgment execution proceedings, Spain also asks for a stay of post-judgment discovery.  And it further requests that the Court quash third-party subpoenas seeking information about its assets that Blasket has issued to Spain's legal counsel (the law firm subpoenas), companies with which its national soccer team does business (the World Cup subpoenas), and banks where Spain is a client (the bank subpoenas).  Def.'s Mot. at 2, 21–22; Def.'s 2d Mot. to Quash.

Federal Rule of Civil Procedure 69(a)(2) establishes a "quite permissive" post-judgment discovery regime.  Republic of Argentina v. NML Cap., Ltd., 573 U.S. 134, 138 (2014).  "In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person—including the judgment debtor—as provided in these rules . . . ."  Fed. R. Civ. P. 69(a)(2).  And as the Supreme Court has explained, Rule 69 applies equally to foreign state judgment-debtors; the FSIA does not provide them with "penumbral 'discovery immunity.'"  NML Cap., 573 U.S. at 144.

This Court has held that Blasket may begin enforcing its judgment against Spain.  Blasket is therefore also entitled to discovery in aid of execution, as provided for by the Federal Rules of

12

Civil Procedure, so the Court denies Spain's motion to stay post-judgment discovery. The Court does not reach the parties' subpoena disputes at this juncture, however, because they are not ripe.

At present, the law firm subpoenas are broadly drafted to encompass legal bills containing matter descriptions. See, e.g., Curtis Subpoena [ECF No. 103-3] at 3, 7. This breadth raises substantial concerns that compliance with the law firm subpoenas may require time consuming privilege review and screening for nondiscoverable attorney mental impressions. See, e.g., GFL Advantage Fund, Ltd. v. Colkitt, 216 F.R.D. 189, 196 (D.D.C. 2003) (explaining that billing records may be protected from discovery by the work product doctrine when those records disclose legal work done and thus reveal attorney mental processes). Blasket has offered, however, to revise the subpoenas to exclude detailed bills. Decl. of M.B. Jackson ¶ 30. Spain deferred consideration of Blasket's proposal, pending the resolution of its motion for a stay. Id. ¶ 31. But now that the Court will deny Spain's motion, the parties should meet and confer on Blasket's proposal and the law firm subpoenas, generally.

A similar failure to complete the meet and confer process, as required by Local Civil Rule 7(m), precludes resolution of Spain's motion to quash the bank subpoenas and the World Cup subpoenas. Spain raises legitimate concerns in its motion to quash that the subpoenas sweep in the Bank of Spain, despite its presumption of separate juridical status, see Def.'s 2d Mot. to Quash at 9 (citing First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba, 462 U.S. 611, 626–28 (1983) and 28 U.S.C. § 1603(b)(1)), and that Blasket's subpoenas target its national soccer team despite the team's status as a private, independent entity, see id. at 7. But Spain did not confer with Blasket about its concerns before seeking relief from the Court. Pl.'s Opp'n to Def.'s 2d Mot. to Quash [ECF No. 110] at 6–7. The Court therefore directs the parties to also meet and confer on Spain's objections to the bank and World Cup subpoenas. And once the parties complete the meet

and confer process for all three categories of subpoenas, the Court directs them to submit a joint status report outlining remaining areas of dispute, if any, and a schedule of next steps for resolving these disputes.

## **CONCLUSION**

For these reasons, the Court grants Blasket's motion for an order authorizing it to begin enforcing its judgment and registering the judgment in other United States district courts, and it denies Spain's cross-motion for a stay of judgment enforcement proceedings and post-judgment discovery. In light of the parties' ongoing discovery negotiations, and the Court's holdings here, the Court defers resolution of Spain's motions to quash Blasket's third-party subpoenas.

A separate order will accompany this Memorandum Opinion.

/s/
JOHN D. BATES
United States District Judge

Dated: <u>May 12, 2026</u>