**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BLASKET RENEWABLE INVESTMENTS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> KINGDOM OF SPAIN, <br><br> Defendant. | Civil Action No.  20-817 (JDB) |

## <u>MEMORANDUM OPINION AND ORDER</u>

On November 24, 2025, the Court recognized Blasket Renewable Investment's foreign arbitral award against the Kingdom of Spain and entered a final judgment of more than $47 million in favor of Blasket.  Final J. [ECF No. 92].  Shortly thereafter, Blasket commenced postjudgment discovery efforts, issuing subpoenas to several United States-based third parties supplying services to Spain's national football team in connection with the team's participation in the 2026 FIFA World Cup.  See, e.g., Subpoena of FWC2026 US Inc. [ECF No. 107-6].  These subpoenas sought a wide array of documents, including agreements and business communications between the entities and Spain, as well as records of payments to or from Spain or on Spain's behalf.  Id. at 8. Crucially, the subpoenas defined Spain to include its Royal Spanish Football Federation and national football team, among other government instrumentalities.  Id. at 5, 9–12.

Spain now moves to quash or modify these third party subpoenas.  Def.'s Mot. [ECF No. 107-1].[1]  It alleges that the subpoenas are unduly burdensome because they seek information from

---

[1] In that same motion, Spain also moved to quash subpoenas that Blasket issued to banks providing financial services to Spain and its instrumentalities.  Def.'s Mot. at 1.  The parties have agreed, however, to defer resolution of Spain's motion to quash the bank subpoenas until a parallel dispute is decided in <u>Blasket Renewable Investments, LLC v. Kingdom of Spain</u>, No. 20-cv-1081 (D.D.C.) [hereinafter <u>Watkins</u>].  <u>See</u> Joint Status Report [ECF No. 114]

third parties more readily obtained from Spain itself.  Id. at 6.  Spain also contends that the subpoenas harass its football team and federation by demanding private information about their finances irrelevant to Blasket's efforts to identify Spain's attachable assets.  See id. at 7.  Blasket opposes Spain's motion, insisting both that it may seek postjudgment discovery from any person, and that Spain's football federation and team are alter egos of the State, so subpoenas of their financial information are properly tailored towards identifying Spain's attachable assets.  Pl.'s Opp'n [ECF No. 110] at 9–11.  And even if the Spanish national team and federation are not Spain's alter egos, Blasket presses, Spain has a financial relationship with them, so the subpoenas permissibly seek information about assets they might hold on Spain's behalf.  Id. at 11.

Yet Blasket has offered no evidence that Spain exercises sufficient control over its national football federation and team to render them alter egos of the state.  And the Court has no reason to believe that United States-based entities providing services to Spain's national football team are likely to possess information about property that the team or its governing federation holds on behalf of Spain.  In other words, Spain has established that the documents Blasket demands from nonparties are largely irrelevant to identifying Spain's attachable property.  So even under this Court's liberal postjudgment discovery regime, Blasket's subpoenas are overbroad, and the Court grants Spain's motion to modify them.

## **LEGAL STANDARD**

"The rules governing discovery in postjudgment execution proceedings are quite permissive."  Republic of Argentina v. NML Cap., Ltd., 573 U.S. 134, 138 (2014).  A judgment creditor may, in aid of judgment execution, "obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is

---

at 4–5; see also Min. Order (June 2, 2026).  As a result, the Court does not consider Spain's motion to quash the bank subpoenas today.

located." Fed. R. Civ. P. 69(a)(2). In other words, Federal Rule of Civil Procedure 26 also governs postjudgment discovery, and a judgment creditor may seek discovery about any nonpriviledged matter relevant to executing the judgment. See NML Cap., 573 U.S. at 139. Foreign sovereign immunity cannot shield a judgment debtor from this discovery. Id. at 142–43.

Because the purpose of postjudgment discovery is to identify a judgment debtor's attachable assets, judgment creditors need not demonstrate that attachable property exists prior to serving discovery. Id. at 144. Nonetheless, the discovery a judgment creditor serves must be capable of identifying attachable assets—that is, it must seek relevant information. See id.; Tatneft v. Ukraine, Civ. A. No. 17-582, 2021 WL 5353024, at *3 (D.D.C. Oct. 18, 2021) (explaining that postjudgment discovery "must be calculated to assist in collecting on a judgment" (citation modified)).

Rule 26's relevance requirement applies equally to postjudgment subpoenas issued pursuant to Rule 45 as to other forms of discovery. See Coleman v. District of Columbia, 275 F.R.D. 33, 36 (D.D.C. 2011) ("No requirement of relevance is included in the text of Rule 45; however, it is settled that a subpoena is limited in scope by Rule 26(b)(1) of the Federal Rules of Civil Procedure.") Under Rule 45, courts must quash or modify a subpoena if the person opposing it demonstrates that the subpoena is unduly burdensome. Fed. R. Civ. P. 45(d)(3)(A)(iv). And by definition, a Rule 45 subpoena that seeks irrelevant information imposes an undue burden on its recipient. See AF Holdings, LLC v. Does 1-1058, 752 F.3d 990, 995 (D.C. Cir. 2014).

## ANALYSIS

The Court first considers whether Spain has standing to object to the third party subpoenas, before turning to the merits of its contention that the subpoenas are unduly burdensome because they seek irrelevant information.

3

## I.    Standing

At the outset, Blasket asserts that Spain lacks standing to object that, because the third party subpoenas request information that can be obtained from Spain directly, the subpoenas impose an undue burden on their United States-based recipients.  Pl.'s Opp'n at 8.  The Court agrees that Spain may not base its motion to quash on violations of the interests of others.  See W. Coast Prods., Inc. v. Does 1-5829, 275 F.R.D. 9, 16 (D.D.C. 2011) ("A party generally lacks standing to challenge a subpoena issued to a third party absent a claim of privilege, proprietary interest, or personal interest in the subpoenaed matter." (citation modified)).  And Spain has no personal interest in whether American companies are needlessly burdened by subpoenas for information that Blasket could have obtained from Spain.

Blasket does not contest, however, that Spain has standing to assert its alternate grounds for quashal—that the subpoenas harass its football team and federation by seeking private information about their finances irrelevant to Blasket's efforts to enforce its judgment.  This omission raises a secondary question: whether standing to object to a subpoena is jurisdictional, and therefore may not be waived, or alternatively, is a substantive question of whether the movant has the requisite interest in relief.  Compare Cherry v. F.C.C., 641 F.3d 494, 497 (D.C. Cir. 2011) (explaining that parties may not waive the absence of Article III standing because the doctrine is jurisdictional), with Terrence Byrd v. United States, 584 U.S. 395, 410 (2018) (explaining that Fourth Amendment standing is not a jurisdictional inquiry but instead a substantive prerequisite to Fourth Amendment remedies).

While the Court has not identified any case law directly addressing whether standing to object to a Rule 45 subpoena is jurisdictional, first principles reveal that it is not.  Article III standing doctrine derives from the Constitution's case or controversy requirement, Spokeo, Inc. v.

Robins, 578 U.S. 330, 338 (2016), which confines the judicial power to adjudication of disputes where the plaintiffs have a personal stake in "each claim that they press against each defendant, and for each form of relief that they seek," Murthy v. Missouri, 603 U.S. 43, 61 (2024) (citation modified). There is no question that this Court, which had subject matter jurisdiction over the underlying dispute, has the power to manage postjudgment discovery.

Instead, the relevant question is whether Spain may invoke the protections of the Federal Rules of Civil Procedure in support of its motion to quash the third party subpoenas. This inquiry closely resembles nonjurisdictional Fourth Amendment standing analyses, which assess whether a criminal defendant may invoke Fourth Amendment protections to suppress evidence obtained from third parties in prosecutions that the court otherwise has subject matter jurisdiction to hear. The Court therefore concludes that standing to challenge a third party subpoena is nonjurisdictional and may be waived or forfeited. See In re Grand Jury Subpoenas Nos. [Redacted] & [Redacted], Misc. A. No. 26-12, 2026 WL 710202, at *4 (D.D.C. Mar. 13, 2026) (holding that standing to challenge a grand jury subpoena is nonjurisdictional because the inquiry "does not ask whether a dispute is an Article III case or controversy" or "test a court's statutory jurisdiction"); cf. United States v. Sheffield, 832 F.3d 296, 304 (D.C. Cir. 2016) ("As a non-jurisdictional principle of substantive law, Fourth Amendment 'standing' is subject to ordinary rules of waiver and forfeiture . . . .").

Blasket waived any objection to Spain's standing to assert that the subpoenas should be quashed because they seek irrelevant information when it recognized that Spain opposed the subpoenas on relevance grounds, see Pl.'s Opp'n at 10, but nevertheless targeted its standing objection only at Spain's contention that Blasket improperly sought information from third parties that it could more readily obtain from Spain, id. at 8. The Court therefore proceeds to consider the

merits of Spain's contention that the subpoenas impermissibly seek information irrelevant to Blasket's efforts to enforce its judgment.[2]

## II.    The Subpoenas' Relevance

In this arbitral award recognition action, Blasket obtained a judgment against Spain—not its national football team and federation. So to determine whether discovery of their assets is relevant to Blasket's judgment enforcement efforts against Spain, the Court must assess whether Spain's liability may be imputed onto its football federation and team.

In First National City Bank v. Banco Para El Comercio Exterior de Cuba, 462 U.S. 611, 626–27 (1983) [hereinafter Bancec], the Supreme Court held that "government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such." As a result, courts may not impute a sovereign's liability onto its instrumentality unless the instrumentality is an alter ego of the state, or regarding the instrumentality as legally distinct "would work fraud or injustice." Id. at 629 (citation modified). To find that an instrumentality is its state's alter ego, a judgment creditor must show that the instrumentality "is so extensively controlled by its owner that a relationship of principal and agent is created . . . ." Id.

Blasket concedes that Spain's national soccer team and federation are distinct instrumentalities of Spain, but baldly asserts that discovery of their assets is nonetheless calculated

---

[2] Even if Blasket had not waived any objection to Spain's standing to challenge the subpoenas' relevance, it is not clear that Spain lacks standing. Recall that a party with a "personal interest" in the subpoenaed matter may challenge a third party subpoena. W. Coast Prods., 275 F.R.D. at 16. Few courts have considered how far an assertion of "personal interest" may stretch, but Spain could make a colorable claim that although its football team and federation are distinct legal entities, it nevertheless has a "personal interest" in protecting them from harassment as they engage in unofficial diplomacy at the World Cup. Cf. In re Grand Jury Subpoenas Nos. [Redacted] & [Redacted], 2026 WL 710202, at *4 (finding the Federal Reserve Board could have standing to challenge subpoenas that "circumvent the Board's statutory protection from political pressure and control"); Biden v. Nebraska, 600 U.S. 477, 493 (2023) (finding in the Article III standing context that states have standing to sue to protect their official state instrumentalities).

6

towards executing the judgment because they are alter egos of the state.  Pl.'s Opp'n at 3, 11.  But Blasket alleges no facts supporting the inference that Spain so extensively controls its national football team and federation that they are agents of the state.  It argues only that the federation's bylaws are subject to state approval, the federation receives state subsidies, and it is subject to public acts.  Id. at 11.  But as Bancec explains, these are all typical attributes of government instrumentalities, so they do not support the inference that the federation and team are alter egos of the state.  See 462 U.S. at 624 (describing a typical government instrumentality as a separate legal entity that receives state appropriations and was created by a public law specifying its powers).

Blasket also attempts to argue that Spain directs the federation's budget, but it fails to acknowledge that the federation's bylaws establish that the federation "has its own regime for the administration and management of assets and budget" and state approval of expenditures is generally only required for deficit spending.  See Fed'n Bylaws [ECF No. 107-14] at 91–92.  Spain, on the other hand, has proffered substantial evidence that its national football federation and team operate independently of the state, including that the federation is governed by a president and general assembly elected by its members.  Id. at 79–81.  The Court therefore finds that Spain's football federation and team are not alter egos of Spain itself.

Perhaps recognizing the weakness of its alter ego claim, Blasket also argues that discovery of the federation's and team's assets is proper because they may hold assets on behalf of Spain.  Pl.'s Opp'n at 11.  To bolster this assertion, Blasket points out that Spain has historically provided the federation and team with appropriations.  Id. at 11–12.  The Court agrees with Blasket that entities closely tied to a state may hold property on behalf of the state or possess information about the state's attachable assets.  See Aurelius Cap. Master, Ltd. v. Republic of Argentina, 589 F.

App'x 16, 18 (2d Cir. 2014).  But Blasket stretches this line of reasoning too far because it does not subpoena Spain's football federation or team.  Instead, Blasket targets American businesses providing services to Spain's football team in connection with its appearance at the World Cup. The Court is unpersuaded that these American businesses—two steps removed from Spain—are likely to have information about whether Spain's football federation and team hold assets on behalf of Spain.

Blasket's assertion that the American businesses may have received payments directly from Spain and therefore have information about its assets, see Pl.'s Opp'n at 11, is more plausible. And the Court is mindful that Blasket cannot know whether such payments exist without postjudgment discovery.  See NML Cap., 573 U.S. at 144.  But to the extent that Blasket primarily seeks information about payments from Spain itself, its World Cup subpoenas are overbroad.  As currently drafted, the subpoenas require American businesses to divulge their communications and contracts with Spain's football federation and team—regardless of whether those communications or contracts involved Spain itself.  And as the Court has just explained, the federation and team are neither the Spanish state nor alter egos of the Spanish state, so broad discovery into their assets is not relevant to collecting the judgment.  The subpoenas also require disclosure of all transactions with the Bank of Spain, see Subpoena of FWC2026 US Inc. at 9, 16, even as the parties now agree that Spain should not be defined to include the Bank of Spain, see Joint Status Report at 2.

In short, the World Cup subpoenas impose an undue burden because they demand large swaths of documents irrelevant to discovering Spain's attachable assets.  The Court therefore grants Spain's motion to modify the World Cup subpoenas and instructs Blasket to (1) remove Spain's national football federation and team from its definition of Spain, (2) remove the Bank of

Spain from its definition of Spain, and (3) modify the subpoenas, as needed, to comport with the Court's prior orders in this case, including the Court's June 9, 2026, Protective Order.

*    *    *

For these reasons, Spain's motion to quash or modify [107] is GRANTED as to the World Cup subpoenas.  And it is hereby ORDERED that Blasket shall modify the subpoenas to exclude Spain's national football team and federation, as well as the Bank of Spain, from its definition of Spain.  It is further ORDERED that Blasket shall modify the subpoenas, as necessary, to comply with this Court's prior orders, including the Protective Order entered in this case on June 9, 2026.

**SO ORDERED.**

/s/<br>
JOHN D. BATES<br>
United States District Judge

Dated: June 22, 2026